(No. 29528.— ▮▮▮▮▮▮▮)

THE AMBARANN CORPORATION *et al.*, Appellants, *vs.* OLD BEN COAL CORPORATION *et al.*, Appellees.

*Opinion filed November 20, 1946.*

O. C. Sᴍɪᴛʜ, and W. F. Gʀᴀʏ, both of Springfield, Sᴛᴏɴᴇ & Sᴛᴏɴᴇ, of Bloomington, and Gᴇᴏʀɢᴇ E. Aʀᴛʜᴜʀ, of Chicago, for appellants.

Eꜱꜱɪɴɢᴛᴏɴ, McKɪʙʙɪɴ, Bᴇᴇʙᴇ & Pʀᴀᴛᴛ, of Chicago, Fᴇɪʀɪᴄʜ & Fᴇɪʀɪᴄʜ, of Carbondale, and Cᴀʀᴛᴇʀ Hᴀʀʀɪꜱᴏɴ, of Benton, for appellees.

Mr. Jᴜꜱᴛɪᴄᴇ Wɪʟꜱᴏɴ delivered the opinion of the court:

March 8, 1916, Joshua Sinks was the owner in fee simple of a tract of eighty acres of land in Franklin county described as the "South One-half (½) of the North East Quarter (¼), Section Thirty (30), Township Seven (7), Range Three (3) East of the 3rd P.M." On the day named, Sinks and his wife, Margaret, executed and delivered a "Bond for Deed" to the Old Ben Mining Corporation, conditioned that upon the payment of $12,000, as specified, they would execute and deliver to the corporation, "a good and sufficient warranty deed, conveying to it, all the coal, and other minerals or mineral substances in and underlying" the property, together with the right to mine and remove "all said coal, oil and gas underlying said surface and to manufacture the same and their products without being liable for any injury or damage to the owner of the superincumbent soil * * * or for surface subsidence caused by mining out the coal, or oil, or gas." November 16, 1917, the Old Ben Coal Corporation, having succeeded to the rights of the Old Ben Mining Corporation in and to the bond, completed the purchase of the property, and Joshua Sinks and his wife executed a deed captioned ."Warranty Deed to Coal, Oil and Gas," conveying to the Old Ben Coal Corporation "All the coal, oil and gas underlying the surface of the following described land, * * * together with the right to mine and remove all said coal, oil and gas underlying said surface," without being liable for any injury or damage caused "by mining out the coal,

or oil or gas." On January 21, 1921, Sinks and his wife conveyed the property to Joseph Sharkey, "Saving and reserving all coal, oil and mineral rights as heretofore transferred to Old Ben Coal Corporation." Twelve years later, on February 3, 1933, Sharkey and his wife conveyed the premises to their daughter, Amelia K. Sharkey, "Saving and reserving all coal, oil and mineral rights as heretofore transferred to Old Ben Coal Corporation." January 10, 1944, Amelia K. Sharkey, by quitclaim deed, conveyed an undivided one-seventh interest in the land to The Ambarann Corporation of which she is president. This last deed makes no reference to coal, oil or gas rights. In the meantime, the Old Ben Coal Corporation mortgaged its property to secure an indebtedness, the coal, oil, gas and other minerals underlying the land being made subject to the lien of, and the conditions in, the mortgage. The City Bank Farmers Trust Company is the trustee under the mortgage executed August 1, 1924, as supplemented and modified on August 1, 1933. On September 1, 1943, the Old Ben Coal Corporation entered into an oil and gas lease with E. S. Adkins who commenced drilling operations shortly afterwards upon the property in controversy.

On January 14, 1944, the plaintiffs, the Ambarann Corporation and Amelia K. Sharkey, filed their complaint in the circuit court of Franklin county against the defendants, the Old Ben Coal Corporation and Adkins. Plaintiffs alleged that, during the year 1916, prior thereto, and for many years thereafter, until 1940, the presence of oil or gas was unknown in Franklin county, and not within the contemplation or consciousness of the people of the county at the time of the execution of conveyances of the title to coal in place; that the presence, or existence, of oil or gas was not within the contemplation nor within the consciousness of either Joshua Sinks or the Old Ben Coal Corporation; that Sinks did not agree to sell, nor the corporation to buy, oil and gas, but that, by the mutual mistake of

the two, the "Bond for Deed" and the conveyance from Sinks to the corporation included all of the oil and gas underlying the surface of the premises instead of conveying only the coal underlying the surface, as was mutually agreed upon by the parties. Plaintiffs charged, further, that Adkins wrongfully ignored the rights of plaintiff Amelia Sharkey, and was not an innocent purchaser for value. The complaint asked that the "Bond for Deed" and the warranty deed be reformed by striking out all the words having reference to oil and gas or other substances except coal and, further, that Adkins render an accounting. Thereafter, the complaint was dismissed as to Adkins. February 28, 1944, plaintiffs filed an amended complaint against the defendant Old Ben Coal Corporation, adding an alternative theory that the court should either eliminate the words "oil and gas" wherever they appeared or, instead, insert the words 'in coal" following the words "oil and gas" whenever such words appeared in the conveyance. Subsequently, plaintiffs filed a second amended complaint against the defendant Old Ben Coal Corporation, predicated upon the theory of a custom or usage in Franklin county to the effect that the words "oil and gas," or "oil, gas and other minerals," or "other minerals," were used and employed in documents conveying title for the purpose of transferring such oil and gas, or either of these two minerals, as formed an integral part of the coal transferred or sold; that, in the alternative, the words "oil and gas" should be stricken, and that, in the second alternative, the words "in coal" should be added immediately following the words "oil and gas," or the words "other minerals" or the word "minerals" wherever these words appear in the instruments of conveyance. The second amended complaint was later amended by adding the City Bank Farmers Trust Company as a defendant. By its answer to the second amended complaint, the Old Ben Coal Corporation denied the material allegations of plaintiffs' pleading, and averred

that plaintiffs were barred by *laches;* that they were estopped by virtue of the recitals in their conveyances; that Joshua Sinks, when he executed the deed to Joseph Sharkey reserving the coal, oil and gas previously transferred to the corporation, ratified and confirmed the conveyance he had hitherto made to the corporation of all of the coal, oil and gas underlying the surface of the premises, and that the words "coal, oil and gas," being plain and unambiguous, and having a settled legal connotation, were not subject to contradiction or modification by any trade expression or custom. The answer of the City Bank Farmers Trust Company is substantially the same as the answer of the Old Ben Coal Corporation, except that it recites two mortgages and the assignments made to it, and averred that it was a *bona fide* purchaser for value without notice. Plaintiffs replied to the answers. The cause was referred to a special master in chancery who heard five witnesses. The order of reference was then set aside and the cause ordered heard by the chancellor. The evidence of the witnesses testifying before the master was certified to the court. Considerable additional evidence was heard, and a decree was entered dismissing the second amended complaint for the want of equity. After the decree was entered, plaintiffs were again permitted to amend their complaint to conform to the evidence by charging that a latent ambiguity had arisen in the deed in that the same language used to convey the oil in the coal may also be used to describe pools of petroleum which were not sold with the coal nor intended to be conveyed therewith. Defendants answered the amendments.

The record is voluminous, consisting of 1567 pages, the greater part consisting of inadmissible evidence which does not require detailed narration. Forty-one witnesses, in noway connected with the transactions involved in this litigation, testified that they understood the words "coal, oil and gas" in a deed to mean the coal and only the oil and gas

in the coal. A consulting petroleum geologist and engineer testified that, in his opinion, the oil and gas now being produced or found in Franklin county was present in 1900. The evidence relative to the transaction in question consists of the deposition of Joshua Sinks offered by plaintiffs, and a portion of the testimony of D. W. Buchanan, president of the Old Ben Coal Corporation, whom plaintiffs called as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1945, chap. 110, par. 184.) Sinks was eighty-two years of age at the time his deposition was taken. He testified that he did not remember signing a "Bond for Deed," adding, "but I guess I did it." He did recall making a deed to the coal, saying, "I was selling the coal and that was what he [Buchanan] said he wanted to buy;" that there was no conversation at the time between them about buying and selling anything other than coal, and that it was quite a while after the sale of the coal when he first learned the company was claiming ownership of the oil. On cross-examination, Sinks testified that he had lived in the community of West Frankfort practically all his life; that he had been president and a director of the Union State Bank of Frankfort Heights five or six years, operated a store, a dairy, had owned real estate, and had been president of a building and loan association for many years. Sinks was represented by counsel in his transactions with the coal company and, later, with Joseph Sharkey. He stated that when he executed the deed to Sharkey he knew it contained a clause saving and reserving coal, oil, and mineral rights therefore transferred to the coal company and that he directed the incorporation of this language in the deed. He said that probably within two years after he had executed the deed conveying the coal, oil and gas to the Old Ben Coal Corporation, he learned that he had deeded the oil and gas, but did nothing about it; that he endeavored to abide by his actions; that he did not think he made any complaint to the corporation

he did not sell the oil; that he did not intend to deed the oil; that he did so, however, and when he learned about it the matter was ended so far as he was concerned, adding, "there was no use to lie about it." He testified, further, that he was not then (upon the trial) claiming any interest in the oil. An examination of the testimony of Joshua Sinks discloses nothing tending to support a supposed usage or custom. Buchanan testified that the corporation generally attempted to buy everything except the surface, including the coal, oil, gas and other minerals but that, in a few transactions, the coal only was purchased. He also stated that Sinks was represented by a lawyer when the "Bond for Deed" was signed, and that the corporation bought from Sinks everything except the surface, and that, during the progress of the negotiations, he informed Sinks what the company was buying. Buchanan concluded his testimony with the observation that he had never heard of so foolish an interpretation of the words "oil and gas" as meaning only the oil and gas in the coal.

To obtain a reversal of the decree, plaintiffs maintain, first, that the deed of November 16, 1917, conveyed to the Old Ben Coal Corporation the coal underlying the property described and only such oil and gas as was necessarily extracted in the production of the coal. They insist that the deed is susceptible of the construction advanced and that, as grantees of all except that which Sinks conveyed to the corporation, they are entitled to petroleum oil and gas underlying the land conveyed to them by Sinks. Twelve familiar rules concerning the construction of written instruments are invoked to support their contention. To sustain the decree, defendants maintain that the conveyance of "all the coal, oil and gas" underlying the property is unambiguous and conveyed all rights which the grantor, Joshua Sinks, had in the coal, oil and gas.

The deed from Sinks to the corporation is a warranty deed and expressly conveys "All the coal, oil and gas under-

lying the surface," together with the right to mine and remove "all said coal, oil and gas." The quoted grant clearly reflects the intention of the grantor to vest coal, gas and oil rights in the grantee. In *Jilek v. Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241, the owner of the land first conveyed by warranty deed "all the coal, oil, gas, and other minerals in or underlying" the property, together with the rights to mine and remove all the coal and other minerals underlying the land. After this conveyance, the owner of the fee sold the land, reserving to the grantors "all the coal, oil and gas underlying the surface of such land, with the right to mine and remove all coal, oil and gas, etc." Similarly, in the present case, Sinks, after making the conveyance to the Old Ben Coal Corporation, conveyed the property to Joseph Sharkey saving and reserving all coal, oil and mineral rights theretofore transferred to the corporation. The issue presented for decision in the *Jilek case* was whether the owner of land in fee simple may convey and grant to another the right to take or own oil or gas in the ground in and by a mineral deed without, at the same time, conveying the superimposed surface of the land. Answering the issue presented in the affirmative, this court observed: "We entertain no doubt of the right of a land owner to convey minerals by deed, and we hold that the mineral deed of July 12, 1905, vested in J. T. Chenault and his grantees the right to such oil and gas under the real estate in question as they might reduce to possession as a part of the mineral estate so conveyed; and that the surface estate acquired by appellants, which excepted the coal, oil, gas and minerals as appertaining to it, acquired no right to take oil and gas from the mineral estate." *Ford v. Witwer,* 383 Ill. 511, is to the same effect. In the *Jilek case,* we said, "Oil and gas, by the overwhelming weight of authority, are minerals, [Citations] and belong to the owner of the land so long as they remain in the land." See:

*Shell Oil Co. Inc.* v. *Moore,* 382 Ill. 556; *Triger* v. *Carter Oil Co.* 372 Ill. 182. The language employed in the deed from Sinks to the Old Ben Coal Corporation is more specific than in the challenged deeds in the *Jilek* and the *Shell Oil Co. cases.* As the chancellor pertinently observed in his "Remarks and Conclusion of the Court:" "In the Moore and Jilek cases the question was whether the words 'other minerals' included oil and gas. So, since our Courts have repeatedly held that 'coal and other minerals' include 'oil and gas,' surely a conveyance of the coal, oil and gas means exactly what it says. These words have a well defined meaning and are not ambiguous."

Recourse to the deed from Sinks to Joseph Sharkey discloses that it conveyed the property "Saving and reserving all coal, oil and mineral rights as heretofore transferred to Old Ben Coal Corporation." The later deed from Sharkey to his daughter, Amelia, contains identical language. The rule is firmly established that the grantee in a deed is estopped to deny the recitals therein, and after the deed is duly placed of record, all persons claiming through the grantee are likewise estopped. (*Smith* v. *Young,* 160 Ill. 163; *Orthwein* v. *Thomas,* 127 Ill. 554.) In the case last cited, this court observed: "It is manifest that the recitals of fact in this deed operate by way of estoppel upon Thomas Osborn, and, after its record in the proper county, August 9, 1827, upon his grantees. As was said in *Pinckard* v. *Milmine,* 76 Ill. 453: 'We recognize the doctrine of estoppel by the recitals in a deed, and that a party claiming under such deed cannot be permitted to deny any fact admitted to exist by such recitals,'—citing *Byrne* v. *Morehouse,* 22 Ill. 603, and *Rigg* v. *Cook,* 4 Gilm. 336; and adding: 'The principle of these cases is, that whatever rights legitimately arise on such admitted facts may at all times be asserted, whether it be to obtain or defend the possession of such rights.'" In 31 C.J.S., Estoppel, sec. 38, these pertinent observations occur: "As

a general rule, a grantee is estopped to deny the validity of any outstanding interest, to which his deed recites that the conveyance to him is subject. Thus 'where the deed so recites, the grantee is estopped to deny the validity of an easement, lease, or lien. * * . * The grantee in a deed will be concluded by recitals therein limiting the quantity or extent of the interest conveyed and making reservations in favor of the grantor or third person." For the reason that the conveyances from Sinks to Sharkey and from the latter to his daughter specifically saved and reserved all coal, oil and mineral rights previously transferred to the Old Ben Coal Corporation, plaintiffs are now precluded from successfully asserting any right, title or interest in oil rights.

Plaintiffs are not in a position to press their charge that the claim of ownership made by the defendant corporation to the oil and gas underlying the property constitutes a cloud upon their title to the oil and gas and should be removed. (*Coel* v. *Glos*, 232 Ill. 142.) A party cannot complain of a cloud upon a title which he does not own. A situation closely paralleling the facts in the case at bar was presented in *Ford* v. *Witwer*, 383 Ill. 511, where we said, "The law is that if plaintiff has no title himself, he cannot complain that there is a cloud upon the title, for the presence of such can be no concern of his."

Plaintiffs earnestly maintain, however, that the words "coal, oil and gas" in the deed from Sinks to the Old Ben Coal Corporation are ambiguous, and that extrinsic evidence is admissible to show the intention of the parties to the deed, namely, that Sinks did not intend to sell, nor the coal company to acquire, oil and gas rights. As narrated, numerous witnesses testified in behalf of plaintiffs to support their attempt to prove a custom and usage in Franklin county that the words "oil and gas" were employed to designate and identify the oil and gas within the coal, in contradistinction to pools of oil lying beneath the coal, and

that this common interpretation became a part of, and attached to, each transaction involving the purchase and sale of coal, by implication, unless a contrary intention was shown in the instrument. Much documentary evidence was introduced for the same purpose. The evidence, both oral and documentary, was received subject to objections repeatedly interposed to all evidence of this character. Where unambiguous language, which has a settled legal meaning, is used in a contract or deed, evidence, whether of custom or otherwise, is inadmissible to vary or contradict the words employed. The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and where the challenged instrument is unambiguous, the instrument itself affords the only criterion of the intention of the parties. (*Decatur Lumber and Manufacturing Co.* v. *Crail,* 350 Ill. 319; *Morton* v. *Babb,* 251 Ill. 488; *Fowler* v. *Black,* 136 Ill. 363.) Again, "That one will not be permitted to prove a custom or usage the effect of which will be to add to an express agreement a condition or limitation which is repugnant to or inconsistent with the agreement itself, will hardly be questioned. This is not only the universally received doctrine on the subject, but it has been often fully recognized by this court. [Citations.] In the editor's note to *Wigglesworth* v. *Dalleson,* Smith's Leading Cases, 309, it is said: 'Evidence of usage, though sometimes admissible to add to or explain, is never to vary or to contradict, either expressly or by implication, the terms of a written instrument.'" *Gilbert & Co.* v. *McGinnis,* 114 Ill. 28.

The gist of plaintiffs' argument and the purport of the evidence adduced in their behalf is that the words "All the coal, oil and gas" meant all the coal, but only the oil and gas in the coal. In short, they seek to have the deed read, in effect, "All the coal, but only that part of the oil and gas, if any, in the coal." In reality, they seek to destroy

the language expressly used in the deed, rather than to merely interpret the words. Since a conveyance of "all the coal, oil and gas underlying the surface" is free from ambiguity, and has a long-settled meaning, the testimony tending to show a contrary meaning was inadmissible. In *Ford* v. *Witwer*, 383 Ill. 511, the language of the reservation is substantially the same as in the deed from Sinks to the coal company in the instant case. The conveyance to the appellants in *Ford* v. *Witwer* excepted the coal, oil and gas, together with the right to mine and remove them as theretofore conveyed. To the contention of the owners of the surface that evidence should have been admitted to ascertain the intent of the parties and to clarify ambiguities, we answered: "There was no ambiguity in the excepting clause or the excepting clauses contained in the deeds that preceded it. Such evidence was properly rejected." Since the evidence introduced for the alleged purpose of giving the words "all the coal, oil and gas" a meaning different from their established connotation was inadmissible, the court properly declined to consider it.

Our conclusion is fortified by the fact that less than one year after the execution of the warranty deed from Sinks to the company, he executed a second deed on August 20, 1918, to the same coal company, conveying another tract of land. This deed is captioned, "Warranty Deed to Coal" and conveyed "All the coal underlying the surface of the said described land, * * * together with the right to remove all the coal." The execution of this second deed conveying only coal demonstrates that when Sinks executed the first deed, in 1917, conveying coal, oil and gas, he knew that he was selling the oil and gas, if any, as well as the coal, and that the company was purchasing the oil and gas rights. The president of the company testified that when able so to do, the coal, oil, gas and other minerals were purchased, but that when the landowner would sell only the coal, the company purchased the coal,

alone. The two deeds executed by Sinks to the same grantee clearly reflect his intention in both instances. We recur again to the chancellor's helpful memorandum opinion, "The record is burdened with an attempt to prove custom and usage in Franklin County but when it comes to the transaction between Sinks and Old Ben it seems that both parties knew what they were doing. There was no mistake or misunderstanding."

Plaintiffs contend, in the alternative, that the deed in question should be reformed to accord with the intention of the parties by inserting language more likely to express such intention. The argument is advanced that there was either a mutual mistake in the drafting of the instrument, or that the mistake was created by the misrepresentations of the coal company. To reform an instrument upon the ground of mistake, the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another. Before a deed will be reformed, satisfactory evidence of mistake must be presented, and the evidence must leave no reasonable doubt as to the mutual intention of the parties, a mere preponderance of the evidence being insufficient. (*Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19; *Tope* v. *Tope,* 370 Ill. 187.) Plaintiffs wholly fail to bring themselves within the contemplation of the foregoing principles. Evidence of either mutual mistake or a mistake as the result of fraud is wanting. The chancellor who heard the greater part of the evidence in open court, and had the benefit of seeing and hearing the witnesses, found that there was no mutual mistake of fact in the execution of the various instruments, and, further, that there was no fraud, observing, "The only purpose in seeking reformation in this case is to avoid the construction placed by the courts on the words 'Coal, oil and gas.' The mistake, if any, is one of law." We

cannot say the conclusion that there was no mutual mistake or fraud is against the manifest weight of the evidence. Moreover, it is to be remembered that it is not Joshua Sinks, the original grantor, who is seeking reformation of his warranty deed to the coal company. Sinks testified that within a period of two years after the conveyance, he knew that he had sold the oil; that he did not complain in this regard to the company, as he desired to abide by his action, and that it was he, himself, who directed a reservation of the coal, oil and gas to be placed in his deed to Sharkey in 1921. Moreover, Sinks ratified the transaction of 1917 when, four years later, he conveyed the property to Sharkey, saving and reserving coal, oil and gas previously conveyed to the coal company. Without question, Sinks knew, in 1921, that he had conveyed the oil rights in the land to the company, and had decided to stand by his action. The remedy of reformation is not open to plaintiffs.

The decree of the circuit court of Franklin county is affirmed.

*Decree affirmed.*