Schoen-McAllister Company, Plaintiff-Appellant, v. Oak Park National Bank, as Trustee Under Trust Number 1333, Defendant-Appellee, and Unknown Owners of Beneficial Interests in Said Trust, Defendants.

Gen. No. 45,969.

Opinion filed March 9, 1953. Released for publication April 6, 1953.

CAMERON & HEATH, of Chicago, for appellants; JOHN R. HEATH, and GEORGE R. HOOPER, both of Chicago, of counsel.

ISAAC M. MILLS, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff, the Schoen-McAllister Company, filed a suit in chancery against the Oak Park National Bank, as trustee (hereinafter referred to as defendant), and the unknown owners of beneficial interests, seeking construction of a store-building lease entered into June 30, 1945 between plaintiff and Oak Park Trust and Savings Bank, the predecessor in interest of the Oak Park National Bank, as trustee.

Defendant filed a motion to strike the complaint, which was allowed in part and dismissed in part. Thereafter defendant filed an answer and counterclaim, and plaintiff interposed a motion to dismiss the counterclaim. After hearing arguments by the respective counsel, and disposing of the various motions, the chancellor entered a decree on July 21, 1952 disposing of the entire case on the pleadings. Plaintiff appeals from certain parts of the decree.

The complaint alleged that defendant's predecessor and plaintiff executed a lease on June 30, 1945 whereby the lessor demised to plaintiff certain premises in the City of Berwyn, Illinois, for the sale of merchandise. A copy of the lease was attached to the complaint. The lease superseded a pre-existing lease made in 1931, under which plaintiff had been in possession of the demised premises.

Under the terms of the lease plaintiff was required to pay, as part of the rent reserved thereunder, five per cent of its gross sales up to $200,000 in each year, three and one-half per cent of its gross sales in excess of $200,000 up to an additional $100,000, and five per cent of all gross sales over $300,000. For the year 1950 plaintiff reported gross sales of $383,982.71 and paid rent accordingly. About April 1, 1951 defendant, to whom the lease had been assigned on August 1, 1950, caused an audit to be made of the records of plaintiff for the calendar year 1950 by a firm of public accountants who reported that plaintiff's gross sales were understated in the amount of $23,895.28, of which amount $15,794.67 represented sales to plaintiff's employees, and $8,100.61 represented amounts collected from customers on account of the Illinois retailers' occupation tax. The report stated that both these amounts should be included in gross sales for the purpose of computing rent under the lease. Accordingly, on May 5, 1951, defendant made a five-day demand on plaintiff for the

payment of five per cent of the sum of $23,895.28, or $1,194.76.

Plaintiff conceded that sales to employees should have been included in gross sales for the purpose of computing the rent, but contended that any sums collected for the retailers' occupation tax should not be so included. In order to prevent any attempt at cancellation of the lease by the lessor before a judicial determination of the question could be had, plaintiff on May 8, 1951, under duress, as it contends, paid to defendant the full sum of $1,194.76 claimed, accompanying the payment with a written notice that $405.03 of said amount, representing five per cent of the amount paid by customers on account of the retailers' occupation tax, was made under protest and without prejudice to the right of plaintiff to demand and obtain a refund thereof. The complaint therefore prayed (1) that the court enter a decree finding that the amounts collected by plaintiff from customers on account of the retailers' occupation tax should not be included in gross sales of plaintiff for the purpose of computation of rent under the lease and ordering the repayment by defendant to plaintiff of the sum of $405.03 paid under protest; (2) that the court issue a preliminary injunction restraining defendant from canceling or attempting to cancel the lease on the ground of failure by plaintiff to pay rent computed on the basis of the inclusion of amounts collected from customers on account of the retailers' occupation tax on gross sales of plaintiff; and (3) that the court by final decree permanently restrain defendant and its agents from canceling or attempting to cancel the lease upon the ground of failure of plaintiff to pay rent as above stated.

The two principal grounds set forth by defendant in its motion to strike the complaint and dismiss the suit were: (1) that as to the sum of $405.03 paid by plaintiff, the facts did not constitute duress in law because

plaintiff had a complete and adequate remedy by filing a complaint in equity to restrain the cancellation of the lease before this sum was paid to defendant, and that since plaintiff had not availed itself of such remedy the payment was voluntary and could not be recovered; and (2) that plaintiff had not alleged any facts to support a finding that the amount of its gross sales used as a basis for computing the rental payable under said lease should not include the amount of the retailers' occupation tax paid by plaintiff or to support its right to an injunction to restrain defendant from canceling the lease because of plaintiff's failure to pay rent computed on the full amount of such gross sales.

After a hearing on the motion to dismiss, the chancellor ordered (1) that the motion be sustained as to the allegations of the complaint with respect to the recovery from defendant of the sum of $405.03 paid under protest, and (2) that the motion be overruled in all other respects and as to all other allegations of the complaint.

Defendant thereafter filed its answer and a counterclaim, the particulars of which need not be recited. No evidence was adduced upon the hearing, and the case was decided solely on the pleadings, to which plaintiff made no objection. In the final decree dismissing the complaint for want of equity, at plaintiff's cost, the chancellor retained jurisdiction for the purpose of hearing evidence in order to determine the amount of the costs, attorneys' fees and expenses which the defendant should be entitled to recover.

The principal question presented is whether, under the provisions of the lease, plaintiff obligated itself to pay a percentage of the full amount of its sales undiminished by the amount of the tax which plaintiff is required to pay under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1951, ch. 120, sec. 440 et seq. [Jones Ill. Stats. Ann. 119.450 et seq.]) or of any other tax

504

or expense. Plaintiff takes the position that the language of the lease is ambiguous and therefore the case should be remanded to permit the litigants to introduce evidence as to the intention of the parties to the lease, and the construction placed by them on the lease; and also, to introduce evidence as to the business or trade customs in effect in Cook county at the time the lease was executed. The pertinent part of the lease contains the following definition: "The term 'gross sales,' for all purposes of this lease, shall mean the total price or charge paid or agreed to be paid on each sale made or service undertaken (other than beauty parlor services) at said demised premises or made or undertaken in connection with or as a part of the business conducted at said premises, during the month in question." Although this provision does not specify whether the amounts collected for the retailers' occupation tax should be included in gross sales for the purpose of computing the percentage rental, it does state specifically that the term gross sales, for all purposes of the lease, shall mean the total price or charge paid or agreed to be paid on each sale. The context of the lease thus appears clear and unambiguous; and where an instrument is clear and unambiguous, extraneous evidence is inadmissible to vary or augment its terms. The real test of the intention of the parties is the language of the lease. 51 C. J. S. Landlord and Tenant § 232 b (pp. 850–851). In the early case of *Walker v. Tucker,* 70 Ill. 527, the court said that "in the construction of a contract, where the language is ambiguous, courts uniformly endeavor to ascertain the intention of the parties and to give effect to that intention; but where the language is unambiguous, although the parties may have failed to express their real intention, there is no room for construction, and the legal effect of the agreement must be enforced." More recently, the Supreme Court held in *Domeyer v. O'Connell,* 364 Ill. 467, a case

cited by plaintiff, that "the object of construction is to ascertain the intention of the parties. (*Decatur Lumber & Manufacturing Co. v. Crail,* 350 Ill. 319.) That intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express. Where there is no ambiguity in the language used, from that, and that alone, may the intention of the parties be gathered." And in the *Decatur* case the court observed: "If a written contract purports on its face to be a complete expression of the whole agreement, it is to be presumed that the parties introduced into it every material item and term, and in construing it the court will not add thereto another term about which the agreement is silent. * * * The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties."

Neither of the parties cites any decisions where the precise question here presented was passed upon, but in the following cases the courts had occasion to consider and construe similar provisions and the identical term "gross sales." In *Levy v. Forma,* 65 N. Y. S. (2d) 505, aff'd 297 N. Y. 848, 78 N. E. (2d) 865, the court had before it for construction a lease providing for payment of a fixed annual and additional percentage rental, the latter to be computed on gross sales but with the express reservation that the phrase "gross sales" was, by the terms of the lease, not to include local sales taxes. Defendants there contended for the right to exclude, in the computation of gross sales, the amount of the federal excise tax on distilled spirits, but the court held that if they were permitted to do so they would "in effect be deducting an item of expense to them from the actual sales. This would distort the

506

meaning of the word 'gross' to something less than the totality which its use imports." In *Gee Coal Co. v. Department of Finance of Illinois,* 361 Ill. 293, it was held that a freight charge constituted part of a selling price requiring consideration in determining gross receipts, notwithstanding that such charge was billed separately. In another Illinois decision, *Vause & Striegel v. McKibbin, Inc.,* 379 Ill. 169, the court held: "The mere fact that the retailer and the consumer may, by a particular form of billing, denominate the three cents additional charge in one instance a tax and in another a part of the selling price is not decisive. Manifestly, the State cannot be deprived of the tax upon the actual selling price irrespective of the form of invoice agreed upon by a retailer and the purchaser from him. Again, so far as the consumer is concerned, the selling price is $1.03, irrespective of the manner of bookkeeping." The closest approach to the precise question was presented to the Arizona court in *State Tax Commission v. Quebedeaux Chevrolet,* 71 Ariz. 280, 226 P. (2d) 549. There the commission contended that the excise tax in question should be based on the full sales price, including the amount of the tax, whereas the retailer contended that the tax should be computed on the sales charge before the addition of the tax. As in the case before us, the price was stated separately, so much for the merchandise and an additional two per cent for the tax. In deciding the question the court held: "It likewise is true that the tax in question here is no different from rent, utilities, ad valorem taxes, or wages (which plaintiff likewise is not selling) in that it constitutes part of the over-all cost of operation which must be considered when plaintiff fixes the selling price of the tangible personal property which it does sell. *Each item considered in setting the ultimate selling price, including the tax now in question, is paid by the consumer solely to get the goods.* The tax therefore is part of the purchase

price, and this price which is paid to get the goods which plaintiff does sell constitutes gross income on each transaction. The Act provides that the 'gross proceeds of sales or gross income from the business,' Sec. 73–1303 (d), is the base by which the 2% tax is measured. The tax therefore is a part of the selling price which forms the base upon which the amount of the tax is levied." (Emphasis supplied by the Arizona court.) In *People's Drug Shop, Inc. v. Moysey,* 317 Ill. App. 370, aff'd 384 Ill. 283, the court said: "It is true that the merchant need not absorb the so-called Sales Tax and may pass it on to the consumer, but only as part of the sale price, not as a tax on the consumer. * * * The seller is not an agent of the State to collect the tax (*Winter v. Barrett,* 352 Ill. 441); he, himself must pay it. The tax is imposed on a class of vendors which includes plaintiff; it is not a consumer's tax." We regard these authorities as soundly reasoned and controlling.

██ Conversely, we do not think that evidence of business or trade customs is admissible to show the intention of the parties where the lease is unambiguous. *Ambarann Corp. v. Old Ben Coal Corp.,* 395 Ill. 154; *Garofalo Co., Inc. v. St. Mary's Packing Co.,* 339 Ill. App. 412. Accordingly, we hold that the authorities cited by plaintiff in support of its contention that the case should be remanded to adduce evidence touching upon the intention of the parties, either to construe the lease or to establish business or trade customs, are not in point.

██ As the remaining ground for reversal it is urged that defendant is not entitled to recover costs, attorneys' fees and expenses of this litigation. In the instant suit defendant sought to enforce plaintiff's covenant in the lease to pay the percentage rental in full on its 1951 sales, which was due January 15, 1952, part of which still remains unpaid. The lease with respect to

attorneys' fees provides: "The Lessee further agrees to pay and discharge all reasonable costs, attorneys' fees and expenses that shall be made and incurred by the Lessor in enforcing the covenants and agreements of this lease to be kept and performed by the Lessee, and the parties to this lease agree that the covenants and agreements herein contained shall be binding upon, apply and inure to the respective successors and assigns." Defendant was obliged, in order to protect its interest, to file an answer to the complaint which, among other matters, prayed that a decree be entered finding that amounts collected by plaintiff from customers on account of the retailers' occupation tax should not be included in the gross sales of plaintiff for the purpose of computation of rent under the lease, and ordering repayment by defendant to plaintiff of a stated amount for rent paid under protest. Defendant, to obtain affirmative relief to collect the disputed rentals, filed a counterclaim. This is not solely, as plaintiff's counsel describe the present proceeding, a suit for the construction of the lease; instead, plaintiff prays judgment as well that it not be required to pay as rent certain sums which are claimed by defendant to be due it from plaintiff as rent, and that defendant refund to plaintiff a stated sum paid as rent. In the circumstances, defendant is entitled to reasonable attorneys' fees and costs of this litigation. *Farmers' & Merchants' Nat. Bank v. Bailie,* 138 Cal. App. 143, 32 P. (2d) 157.

The decree of the superior court was proper and is therefore affirmed.

*Decree affirmed.*

NIEMEYER, J. and BURKE, J., concur.