(No. 6951—

CRAWFORD, MURPHY & TILLY, INC., Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Order filed August 18, 1977.*

TRAYNOR & HENDRICKS, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; LAWRENCE W. REISCH, JR., and WILLIAM E. WEBBER, Assistant Attorneys General, for Respondent.

HOLDERMAN, J.

Claimant, on April 1, 1970, entered into a contract with the State of Illinois through the Department of General Services to furnish engineering services in connection with the construction of certain road improvements including the construction of an all-weather entrance road and parking plan.

The claim before this Court is for the sum of $13,481.58 which Claimant contends is the balance due for the services rendered. Respondent contends that Claimant is entitled only to the sum of $9,456.96. The sole dispute is whether or not Claimant is entitled to be remunerated based on nine percent of the actual cost of construction or whether Claimant must settle for seven percent of the revised estimated cost. The contract provisions relative to remuneration are as follows:

Compensation of Associate Engineer:
It is agreed that the Associate's commission shall be based either upon nine percent of an estimated cost of $63,850.00, which is $5,746.00, or nine percent of the actual cost of construction, whichever is lesser. It is agreed that the cost of construction, whichever is lesser. It is agreed that the supervising architect be given a revised final estimate upon completion of drawings and specifications and prior to advertising for bids. If this estimate is greater than the original estimate, the Associate fee will be adjusted as approved by the supervising architect and paid on the basis of the foregoing percentage applied to this approved revised estimate, or to the actual cost of construction, whichever is lesser."

The original estimate was the sum of $63,850.00, but this estimate was not made by Claimant. It was prepared within the office of the supervising architect

and the Department of Conservation.

However, the scope of the work was expanded extensively and the revised final estimate was the sum of $201,230.75. This was less than the construction cost and therefore the basis for computing the fee.

If Claimant is entitled to the fee based on nine percent of the estimated cost, then it is entitled to recover the amount sued for, that is, $13,481.58. This also includes remuneration for special duties in the amount of $1,116.81 but there is no dispute on this last item. If the seven percent rate is to be used, then Claimant has coming $9,456.96, which sum also includes the $1,116.81 for special duties. The balance of the consideration for services rendered due to Claimant has been paid for.

The work was completed on August 20, 1971. Thereafter, on December 27, 1971, the Department of General Services approved a fee based on nine percent of $201,230.75, the final estimate. At that time, the Department of General Services sent to Claimant a change order, setting forth the change from the original contract price of $5,746.00 to the new price, based on nine percent which was in the amount of $18,110.77. The communication to Claimant requested Claimant to sign the change order and return it to the Department, and that they, in turn, would forward it to the using agency with recommendations for approval and further processing. It was not until nine months later, on May 3, 1972, that the Department of General Services notified Claimant for the first time that the fee had to be adjusted to seven percent because the project exceeded $200,000.00, and they had to stay within the guidelines created by the State Legislature.

Respondent argues that a contract may be reformed when an agreement sets forth something dif-

ferent than what was intended and that courts freely exercise their power to correct mistakes when the proof leaves no doubt that the contract entered into was something different from the real agreement of the parties. There is no argument with this principal of law, but there is no proof anywhere in the record to indicate that the parties actually intended to agree on something different than the nine percent rate set forth in the contract. There was no evidence that there was a mutual mistake of fact nor any evidence that the rate of compensation was erroneous or on its face was known to be erroneous by Claimant.

In order to reform a contract on the ground of mistake, the mistake must be one of fact, mutual and common to both parties, in existence at the time of the execution of the contract, and showing that at such time the parties intended to stipulate a ceratin thing and by mistake stated it a different way. The evidence must leave no reasonable doubt as to the mutual intention of the parties.

We fail to find that Respondent has established that there was a mistake in the first place that was common to both parties and understood by both parties. The chief engineer for Claimant did testify that he knew the Department of General Services had a policy that on engineering projects they had a schedule of fees based on nine percent up to $200,000.00 and that had the State required the fee to be seven percent after $200,000.00, it was certain that Claimant would have negotiated a contract based on such a rate of payment. However, since the written contract contained no such provision and there was no mention of a seven percent figure until nine months after the work was done, we feel that justice requires the State to live up to its agreement as spelled out in the contract. *Ambarann*

Corp. v. Old Ben Coal Corp. 395 Ill. 154, 69 N.E.2d 835 (841).

The State offered no explanation as to why the original contract did not set forth a graduated rate in accordance with what it refers to as the "policy" of the office. It prepared the contract and should have inserted a clause reducing the rate to seven percent if it wanted such an agreement.

Judgment is hereby entered for Claimant in the sum of $13,481.58.