226 P.2d 549

## STATE TAX COMMISSION et al. v. QUE-BEDEAUX CHEVROLET.

### No. 5367.

Supreme Court of Arizona.

Jan. 22, 1951.

Fred O. Wilson, Atty. Gen., and Richard C. Briney, Asst. Atty. Gen., for appellant.

Scott & Green, of Phoenix, for appellee.

UDALL, Chief Justice.

The present appeal is from a judgment rendered against the State Tax Commission of Arizona, defendant-appellant (hereafter called the commission), in favor of Quebedeaux Chevrolet, a corporation, plaintiff-appellee (hereafter called the plaintiff), upon an action containing two counts brought in the superior court for the recovery of certain excise taxes amounting in all to $244.81, which were paid under protest by plaintiff upon business transacted by it during the months of October and November, 1949.

This cause was submitted to the trial court upon a rather lengthy agreed statement of facts which we deem it unnecessary to set out verbatim. These facts establish that plaintiff is, among other things, engaged in the business of selling tangible personal property within the state, under a privilege license issued pursuant to the provisions of Laws 1935, Ch. 77, known as "The Excise Revenue Act of 1935", Secs. 73-1301 to 73-1334, A.C.A. 1939, as amended (hereafter termed the Act).

Plaintiff, as required by Sec. 73-1314, timely filed with the commission its returns showing its "gross proceeds of sales" and "gross income from the business" (hereafter, for the sake of brevity, collectively termed "gross income") for the months of October and November and the amounts of taxes it computed was due thereon. The commission, however, maintained that the figures were incorrect and that the correct amounts were larger than plaintiff reported. The difference between the lesser sums which plaintiff contends is payable and the larger sums which the commission insists is due, amounts to an additional tax of $118.65 for business transacted by plaintiff during October, and for November the further sum of $126.16, or a total on the two counts of $244.81.

·The principle upon which the parties differ may well be illustrated by the following example:

### Plaintiff's contention

| | |
|---|---|
| Retail sales price of an automobile, being plaintiff's gross income therefrom .................... | $3,000 |
| 2% sales tax collected by plaintiff on retail sale *and* tax due under the Act ..................... | $ 60 |

### Commission's contention

| | |
|---|---|
| Retail sale of automobile... | $3,000 |
| 2% tax passed on to purchaser ................. | 60 |
| Plaintiff's gross income.... | $3,060 |
| Tax due under the Act (2% of $3060) ................. | $61.20 |
| Or an additional sum due of | $ 1.20 |

In the course of a year the additional sum which the commission claims is due on plaintiff's business alone would amount to approximately $1500, and it is estimated that on the entire annual volume of business done in the State of Arizona (if the commission's contention is sustained) the amount involved equals approximately a quarter of a million dollars.

In order to avoid being subjected to the penalties and sanctions of the Act, plaintiff paid under protest, before the delinquent date, the amount of the additional sums claimed due, at the same time giving written notice to the commission, as required by the Act, that the payments were made under protest and setting forth the grounds and reasons for same. A hearing was subsequently held at which the commission ruled adversely to plaintiff, making final the claimed additional tax liability. Within the time provided by law plaintiff filed an action in the superior court of Maricopa County to recover the amount of taxes paid under protest.

The facts show that plaintiff at all times billed and stated separately to its customers the purchase price of goods sold and the sums collected by it as payment of the tax, and in addition that plaintiff kept separate and apart from all other monies the sums received by it in payment of the tax.

On the stipulated facts before it, the trial court reversed the commission and rendered judgment for plaintiff. From this judgment and the whole thereof this appeal was taken.

From the example set forth, supra, it is readily apparent that the larger figures of the commission are based upon the contention that the gross income from plaintiff's business include all sums received by it during the two months, specifically including those sums received in payment of the 2% tax imposed upon plaintiff by Sec. 73-1303(d) (1), and that the tax for which plaintiff is liable at the rate of 2% must be computed and paid upon such total amount. On the other hand plaintiff contends that no tax is due on the 2% collected by it from its customers in payment of the tax.

The sole question presented by this appeal then is: Does the 2% tax imposed upon plaintiff by Sec. 73-1303(d) (1), constitute a part of plaintiff's "gross proceeds of sales" or "gross income from the business"? If it does, then plaintiff is liable for the additional taxes which the commission claims are due. Otherwise, it is not.

Plaintiff, in support of its contention that the terms "gross proceeds of sales" or "gross income from the business" do not include the 2% tax, argues that the inclusion of the tax as part of the gross income results in a "tax on a tax" for the following reasons: (1) plaintiff is not engaged in the business of selling taxes and therefore any taxes collected by it are not a part of the gross income from the business; (2) that plaintiff merely collects the tax from the customer and remits it to the commission, i. e., plaintiff is a mere tax collector for the state; and (3) that under Sec. 73-1331, the provision concerning the use of tax tokens, the inclusion in subd. (c) of the words "amounts added to the gross receipts of any business taxable under this act" clearly shows a legislative intent that the tax collected is not to be considered as a part of gross income from the business.

The commission on the other hand, claiming additional taxes are due, contends that the terms "gross proceeds of sales" and "gross income from the business" specifically include monies received as payment of the 2% tax.

These conflicting contentions involve purely a matter of statutory construction, hence we set out the applicable sections of the Act within which the answer must be found:

Sec. 73-1303: "Imposition of the tax.— From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money * * * annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule: * * *

"(d) At an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, except bonds and stock. * * *" "

Sec. 73-1302: "Definitions.—* * *

" 'Gross income' means the gross receipts of a taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses; * * *

" 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expense of any kind, or losses, but cash discounts allowed and taken on sales shall not be included as gross income; 'gross income' or 'gross proceeds of sales' shall not be construed to include goods, wares or merchandise, or value thereof, returned by customers when the sale price is refunded either in cash or by credit, nor the sale of any article accepted as part payment on any new article sold, if and when the full sale price of the new article is included in the 'gross income' or 'gross proceeds of sales,' as the case may be; * * *

" 'Gross receipts' means the total amount of the sale, lease, or rental price, as the case may be, of the retail sales of retailers, including any services that are a part of the sales, valued in money, whether received in money or otherwise, including all receipts, cash, credits and property of every kind or nature, and any amount for which credit is allowed by the seller to the purchaser, without any deduction therefrom on account of the cost of the property sold, materials used, labor or service performed, interest paid, losses or any other expense, but does not include cash discounts allowed and taken nor the sale price of property returned by customers when the full sale price thereof is refunded either in cash or by credit; * * *."

We think it essential to an understanding of the Excise Revenue Act of 1935 to recognize at the outset that the Act does not place a tax upon sales as such, i. e., that it is not a true sales tax measure, but rather a tax upon the privilege of engaging in business.

Plaintiff in support of its argument that the tax was not to be included as a part of its gross income argues that the inclusion of the tax therein results in a "tax on a tax" for the reasons set forth above. The phrase "tax on a tax" admittedly has a certain amount of popular appeal since it has the connotation of being extremely unjust, but the reasoning advanced to support the terminology indicates the weakness of this argument.

As to plaintiff's not being in the business of selling taxes, it obviously is true that plaintiff is engaged only in the business of selling tangible personal property, and the commission does not contend otherwise. It likewise is true that the tax in question here is no different from rent, utilities, ad valorem taxes, or wages (which plaintiff likewise is not selling) in that it constitutes part of the over-all cost of operation which must be considered when plaintiff fixes the selling price of the tangible personal property which it does sell. *Each item considered in setting the ultimate selling price, including the tax now in question, is paid by the consumer solely to get the goods.* The tax therefore is part of the purchase price, and this price which is paid to get

the goods which plaintiff does sell constitutes gross income on each transaction. The Act provides that the "gross proceeds of sales or gross income from the business", Sec. 73-1303(d), is the base by which the 2% tax is measured. The tax therefore is a part of the selling price which forms the base upon which the amount of the tax is levied.

As to the second reason advanced, i. e., that plaintiff is a mere tax collector, the Act taxes plaintiff and no one else upon its gross income. The tax is legally placed upon the retailer and upon him alone, and nowhere is there statutory warrant for his becoming a collector or agent of the state for the purpose of merely receiving such tax and transmitting it to the commission. The practice of "passing the tax on to the purchaser", which has been suffered by the commission although not expressly sanctioned by the Act, other than by Sec. 73-1331, the token section, has effected no basic change in the Act, and this practice, which obviously benefits the retailer, in that upon small or fractional dollar sales more tax is collected than is paid to the commission, does not constitute him a collector for the state but merely increases the base upon which the tax is levied. In Crane Co. v. Arizona State Tax Comm., 63 Ariz. 426, 163 P.2d 656, 662, 163 A.L.R. 261, this court in discussing the Act stated "the appellant is in no sense the tax collector. It is the taxpayer."

Finally, plaintiff in support of its argument that the tax was not to be included as a part of gross income relies to a large extent upon the language of Sec. 73-1331 (c) (as amended by Laws 1937 (1st S.S.), Ch. 2, Sec. 11), which reads:

"(c) Such tokens shall be accepted at their face value by all persons engaged in business within the meaning of this act, as payment to them of any and all amounts *added to the gross receipts of any business taxable under this act.* * * *" (Emp. sup.)

After quoting the above section plaintiff then poses this question: "If, as contended by (the commission), the sales tax was at all times a part of and included within 'gross proceeds of sales', how could it be thereafter 'added' to the same through the medium of tax tokens, or otherwise?"

There is no question but that plaintiff can take some comfort from the language emphasized, but standing alone, as indeed it does, does it show that the legislative intent was not to include the tax as part of the gross income from the business? We think it does not. Had the legislature intended to make such a fundamental change in the meaning of the Act we think it would have indicated such an intention in clear and unmistakable language. The definitions of "gross income", "gross proceeds of sales", and "gross receipts" were not changed to correspond with the meaning which plaintiff urges is the only one

which expresses the true legislative intent. The effect of the construction urged by plaintiff would be to levy the tax upon the customer and convert the retailer into a mere tax collector. This clearly is not the intent and purpose as expressed in the title of the Act, which reads:

"An act relating to excise taxation, and to impose a license fee and *a privilege tax upon the privilege of engaging in certain occupations and business;* and declaring an emergency. (Laws 1935, ch. 77.)" (Emp. sup.)

That the legislature could not have intended the result urged by plaintiff, who relies upon Sec. 73-1331(c), supra, is clearly apparent when it is noted that at the same time the section relied upon was amended, Sec. 73-1330 was added to the Act:

"*Unfair competition.*—No person engaged in any of the businesses classified in section 2 (§ 73-1303), shall advertise or hold out to the public in any manner, directly or indirectly, *that the tax herein imposed is not considered as an element in the price to the consumer. * * *"* (Emp. sup.)

Here, the intent of the legislature as expressed in the title of the Act as originally enacted, is again affirmed. Construing the Act as a whole, which we must do, and not relying upon the isolated "token" clause as does plaintiff, which appears in but one section, we believe it is manifest that the intent of the legislature was not changed by Sec. 73-1331(c) but that the Act in its harmonious whole leaves no doubt that the "gross proceeds of sales" and "gross income" subject to taxation include all sums received by retailers, *including the 2% tax passed on to the buyer as part of the purchase price.*

While the issue presented in the instant case involves problems of first impression with us, in other jurisdictions, under similar statutes, appellate courts have decided such matters adversely to plaintiff's contentions. For example the Supreme Court of California in considering its excise tax measure, in the case of Western Lithograph Co. v. State Board of Equal., 11 Cal.2d 156, 78 P.2d 731, 735, 117 A.L.R. 838, stated: "* * * The tax being a direct obligation of the retailer and, so far as the consumer is concerned, a part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer. It does not become a tax on the sale nor because of the sale, but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales," and in the later case of De Aryan v. Akers, 12 Cal.2d 781, 87 P.2d 695, 697, certiorari denied 308 U.S. 581, 60 S.Ct. 101, 84 L.Ed. 487, the same court concluded: "* * * It must be conceded that the purchase price ultimately is necessarily the source from which payment of the tax must be made. The consumer still has the right to purchase or not at the asked price which in-

cludes the tax. Any quibbling between the parties, in an attempt to differentiate between the purchase price and the tax by reason of the separate statement of the amount intended as tax reimbursement, will not alter the fact that within the purview of the legislative enactment the aggregate of the list price and the amount of tax reimbursement constitutes the actual purchase price of the commodity. * *"

See, also, Moore v. Pleasant Hasler Constr. Co., 50 Ariz. 317, 72 P.2d 573, 579, wherein this court said: "It is the seller's duty, and not the consumer's, to pay the tax."

The Attorney General cites two excellent cases decided by the Supreme Court of Illinois in considering attacks on their excise tax acts. The act of 1933, which placed a tax upon persons engaged in the business of selling tangible personal property at retail at the rate of three per cent of the gross receipts from such sales, was held unconstitutional on grounds not material in the instant case. In the first case, Winter v. Barrett, 352 Ill. 441, 186 N.E. 113, 120, 89 A.L.R. 1398, the court stated, in part: "* * * From these provisions it appears that *the tax is imposed upon persons engaged in the business mentioned.* They are the persons who are required to pay the tax. They are not made the agents of the state or of the department of finance to collect the tax from purchasers and pay it over to the department, but the tax is imposed on them, and they are the ones who are required to pay it. * * *"

In the second case, Vause & Striegel, Inc., v. McKibbin, 379 Ill. 169, 39 N.E.2d 1006, 1007, which arose under the act of 1941, the question presented concerned the validity of a rule of the State Department of Finance that: "'Regardless of how the retailer may set up his selling price, he is required to pay a tax measured by his gross receipts. For example, where a merchant follows the practice of selling an article for $1.00 and adds 3 cents thereto to reimburse himself for the three per cent tax which he will be required to pay, his gross receipts from such sale are $1.03, and he will be required to pay a tax at the rate of three per cent of $1.03 and not at the rate of three per cent of $1.00.'"

The decree of the Circuit Court approving the rule was affirmed. We quote the following excerpts from the Supreme Court opinion:

"Plaintiffs are engaged in the business of selling tangible personal property at retail to purchasers for use or consumption. The retailers price their items in advance and advertise in papers, circulars, placards and price tags, the price of the merchandise offered for sale to the public. After a purchaser appears in response to such an invitation and makes an offer which one of the plaintiffs accepts, the tangible personal property is either delivered or ascertained and designated for future de-

livery, to the purchaser at the time. When the goods are ascertained and the price stated, the retailer advises the purchaser that he must pay, in addition, an amount conformably to (schedule therein set forth) * * *.

"*The narrow issue is, accordingly, whether the retailer must pay the tax upon $1.03 or $1 where he prices the same article at $1 but receives in payment therefor $1.03, the additional three cents being designated, as between the retailer and consumer, a payment of tax.* (Emp. sup.)

"Section 1 of the Retailers' Occupation Tax Act (Ill.Rev.Stat.1941, chap. 120, par. 440, p. 2660) defines 'selling price' or the 'amount of a sale' as 'the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, services and property of every kind or nature and shall be determined, without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost, or any other expense whatsoever.' The same section further declares: ' "Gross receipts" from the sales of tangible personal property at retail means the total selling price or the amount of such sales.' Plaintiffs insist that the statutory definition of 'selling price' manifests a legislative intent to exempt the additional charge of three cents from the tax. *The language employed is not only free from ambiguity but is specific to the effect that the 'selling price' or the 'amount of a sale' is to be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost, or 'any other expense whatsoever.' These words are all-embracing in their scope.* (Citing cases.) *The obvious meaning of the expression 'any other expense whatsoever' precludes the deduction which plaintiffs seek to make in determining their selling price for tax purposes.* Had the General Assembly intended to permit a deduction from the aggregate sum received by the retailer of the amount paid by the customer on account of the payment of retailers' occupation tax appropriate language would undoubtedly have been employed to accomplish its purpose. (Emp. sup.)

· * * * * * *

"* * * *The mere fact that the retailer and the consumer may, by a particular form of billing, denominate the three cents additional charge in one instance a tax and in another a part of the selling price is not decisive. Manifestly, the State cannot be deprived of the tax upon the actual selling price irrespective of the form of invoice agreed upon by a retailer and the purchaser from him. Again, so far as the consumer is concerned, the selling price is $1.03, irrespective of the manner of bookkeeping. If a retailer elects to add the three cents exacted of him by the law to the original selling price of $1 he is not in a position to complain when the State demands that he pay a tax on the amount actually received by him from the*

*consumer, namely, $1.03. In short, where a retailer adds the tax which he is required to pay, to the purchase price of the merchandise sold by him, he must pay the tax on the total amount received by him from the consumer.* The tenuous distinction urged by plaintiffs cannot be sustained. It follows, necessarily, that rule No. 20 of the Department of Finance, to the extent challenged, is valid." (Emp. sup.)

See also the following cases involving somewhat similar questions but raised under different types of taxing statutes: Pure Oil v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260, Annotation 148 A.L.R. 263; Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251; Leader v. Glander, 149 Ohio St. 1, 77 N.E. 2d 69, 174 A.L.R. 1258, Annotation 174 A.L.R. 1263.

 By way of summary we are of the opinion that the statute is plain and unambiguous as to the legislative intent of what constitutes gross income. The sections of the Act heretofore quoted, we believe, are conclusive that the legislature meant by its all-inclusive language to include within the tax base *all amounts received* in return for tangible personal property sold, i. e., the terms "gross income" etc. mean gross receipts of a business before deductions for any purpose, except those items specifically exempted under Sec. 73-1329. This is the interpretation placed upon the Act by the commission which, since its enactment, has been charged with the enforcement of it. If the law is to be changed the responsibility rests with the legislative department of government—we must interpret the Act as it is written.

In conclusion we hold: (1) that the Act does not impose a tax upon the purchaser nor upon sales, but rather places a tax upon the seller for the privilege of engaging in business and fixes the gross income from sales as the base for computing the tax, Arizona State Tax Comm. v. Frank Harmonson Co., 63 Ariz. 452, 163 P.2d 667; White v. Moore, 46 Ariz. 48, 46 P.2d 1077; (2) that the Act makes the tax the direct obligation of the retailer and not that of the consumer; (3) that there is no statutory authority for the retailer attempting to constitute himself a mere collector or agent of the state for the purpose of receiving same and transmitting it to the commission; (4) that the terms "gross proceeds of sales" or "gross income from the business" upon which the tax is based includes any and all sums received, regardless of whether or not the retailer separately bills to his customers the privilege tax he is passing on to them, and whether or not he segregates the amounts thus received.

Judgment reversed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.