291 P.2d 208

**ARIZONA STATE TAX COMMISSION, a body politic and corporate, Warren Peterson, Thad M. Moore and William Stanford, as Members of and constituting the Arizona State Tax Commission, Appellants,**

**v.**

**The GARRETT CORPORATION, Appellee.**

No. 6179.

Supreme Court of Arizona.

Dec. 8, 1955.

Robert Morrison, Atty. Gen., and D. Kelly Turner, Asst. Atty. Gen., for appellants.

Kramer, Roche & Perry and Raymond Huffsteter, Phoenix, and C. W. Leinbach, Jr., and Brian G. Manion, Los Angeles, Cal., for appellee.

STRUCKMEYER, Justice.

This appeal is from a judgment entered in the Superior Court of Maricopa County against appellant State Tax Commission in favor of appellee, The Garrett Corporation, for the sum of $13,587.20. Appellee is engaged in the business of manufacturing in the State of Arizona under the division name of AiResearch Manufacturing Company of Arizona, selling the products of its business to the United States government. Appellants levied an assessment on the gross receipts of these sales, which was paid under protest and this suit instituted for its recovery.

It is appellee's position that the Excise Revenue Act of 1935, as amended, A.C.A.1939, § 73–1301 et seq., as amended, is in practical and legal effect a sales tax and that as such it imposes a direct tax upon the United States government. If this is sound then the action of the State Tax Commission is invalid and void as violating the Federal government's immunity from state taxation.

Section 73–1303, A.C.A.1939, as amended, is nearly word for word identical to its counterpart in the Act as originally passed in 1935:

"73–1303. Imposition of tax.—From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission * * * annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales; or gross income, as the case may be, in accordance with the following schedule:

\*　\*　\*　\*　\*　\*

"(c) At an amount equal to two per cent (2%) of the gross proceeds of sales or gross income from the business upon every person engaging or contin-

uing within this state in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, * *."

We have repeatedly held of this section and in fact of the entire Excise Revenue Act that the tax imposed is a tax on the privilege or right to engage in business and is not a sales tax: Trico Electric Cooperative v. State Tax Commission, 79 Ariz. 293, 288 P.2d 782; Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029, on rehearing 75 Ariz. 376, 257 P.2d 392; State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549; Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684; Pratt-Gilbert Hardware Co. v. O'Neil, 64 Ariz. 393, 173 P.2d 91, on rehearing, 65 Ariz. 90, 174 P.2d 620; Arizona State Tax Commission v. Frank Harmonson Co., 63 Ariz. 452, 163 P.2d 667; Moore v. Pleasant Hasler Const. Co., 50 Ariz. 317, 72 P.2d 573; White v. Moore, 46 Ariz. 48, 46 P.2d 1077. For example, we said in State Tax Commission v. Quebedeaux Chevrolet, supra, after an extended discussion of the nature of the Excise Revenue Act:

"In conclusion we hold: (1) that the Act does not impose a tax upon the purchaser nor upon sales, but rather places a tax upon the seller for the privilege of engaging in business and fixes the gross income from sales as the base for computing the tax, [Citation of cases]; (2) that the Act makes the tax the direct obligation of the retailer and not that of the consumer; (3) that there is no statutory authority for the retailer attempting to constitute himself a mere collector or agent of the state for the purpose of receiving same and transmitting it to the commission; (4) that the terms 'gross proceeds of sales' or 'gross income from the business' upon which the tax is based includes any and all sums received, regardless of whether or not the retailer separately bills to his customers the privilege tax he is passing on to them, and whether or not he segregates the amounts thus received." 71 Ariz. 289, 226 P.2d 555.

In view of such positive unequivocal statements repeated over a period encompassing two decades, it would seem that a question so well settled is not now open to further argument, particularly where long continued legislative acquiescence warrants the presumption that it is in accord with legislative intent.

However, appellee seriously urges that a fundamental change has been made in the basic nature of the Act by reason of recent amendments thereto. It is argued that the amendments expressly sanction the passing on of the tax to the purchaser so that there is clearly and definitely imposed a sales tax on such purchaser regardless of the nomenclature used elsewhere in the Act. The changes relied on occur by the addition of Section 73–1302a, providing:

"Exclusion of tax.—For the purpose of this act the total amount of gross income, gross receipts or gross proceeds of sales shall be deemed to be the amount received, exclusive of the tax imposed by article 13, chapter 73, Arizona Code of 1939, provided the person upon whom the tax is imposed shall establish to the satisfaction of the commission that the tax has been added to the sale price and not absorbed by him, *but in no event shall the person upon whom the tax is imposed, where an added charge is made to cover the tax levied by this act, remit less than the amount so collected to the commission."* (Italics ours.)

That portion of the quoted section which is not italicized was added to the Excise Revenue Act by the Laws of 1952; the italicized portion was added by the Laws of 1954.

In 1951, in State Tax Commission v. Quebedeaux Chevrolet, supra, we held that the base for computing the tax was the gross income or gross proceeds of sale without first deducting the amount of the tax so charged. One year later the legislature, seemingly as the result of our opinion, changed the Act so as to permit the taxpayer to avoid the payment of a tax on the amount of the tax by excluding the tax from the gross proceeds of sale where added as a separate item to the sale price. Cf. Western Lithograph Co. v. State Board of Equalization, 11 Cal.2d 156, 78 P.2d 731, 117 A.L.R. 838.

■ The record in this cause does not reflect the purpose of the amendment of 1954 but the language is plain and unambiguous and what is to be its result is readily ascertainable. In the event the amount charged by the seller—if he adopts the practice of adding the tax as a separate item in the sale price to the purchaser's bill—is greater than two percent of the seller's annual gross proceeds of sale, then that amount is the amount of the tax. But, if the amount charged against the purchaser is less than two percent of the seller's annual gross proceeds of sale or gross income then two percent is still the ultimate measurement of the taxpayer's liability. It should be noticed that the Act has never purported to make the seller the collector of the tax from the purchaser, and no provision has been made to regulate the amount of the tax which the seller may charge to the purchaser on each individual sale. We take judicial notice that some vendors, particularly those handling numerous small sales under one dollar, itemize on the purchaser's billing one cent as purported tax commencing at 15¢, and two cents above fifty cents. By such practice the retailer may collect from the consumer, under the guise of a tax by the state, an amount in excess of two percent of his gross proceeds of sale. The difference was retained by the seller until the amendment of 1954. It is thus

apparent that by the amendment the seller is prevented from profiting at the expense of the purchaser under the guise of a compulsory tax. The amendment tends to cause the seller to absorb the tax rather than add it as a separate item to the sale price since it eliminates at least in part the incentive for a continuation of that practice.

■ We cannot agree with appellee's argument that Section 73–1302a changes the fundamental nature of the Act. The amendments contained in such section are no more than legislative recognition of the common practice which has grown up since the passage of the Act of separately stating the tax independent of the sales price. The section does not specifically authorize such practice; neither does it forbid it. It simply reflects the indifference of the legislature as to the business practices adopted by the taxpayer in conducting his affairs. Certainly the retailer may not, by adopting a particular form of billing as a business practice, change the fundamental nature of the Act. State Tax Commission v. Quebedeaux Chevrolet, supra. The liability for the tax is still the personal liability of the seller. There is no authorization whatsoever to directly shift the tax to the purchaser, nor is the seller made the agent of the state to collect the tax from the purchaser. Consequently we hold that the legal incidence of the tax is still on the person engaging in the business of selling tangible personal property, the retailer, and both in

practical and legal effect the tax is upon the person conducting a business and not upon the transaction, the sale.

We now consider appellee's second contention that "a sales tax imposed upon direct sales made to the United States government is unconstitutional and void as violating the government's implied immunity from state taxation."

■ Several points should immediately be clarified. First, while we have consistently held that the Excise Revenue Act does not impose a sales tax, in passing on the validity of the exaction the descriptive pigeonhole into which appellee places the tax is of no significance for we are concerned with its practical operation and not the precise form of descriptive words which may be applied to it. State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229. How this tax is labeled cannot affect where the legal incidence of the tax is laid or whether its operation violates the government's implied immunity from state taxation. Second, while the agreed statement of the case shows that the sum sought to be collected by the State Tax Commission is two percent of the gross proceeds of appellee's sales, it does not show that the government has been presented with a voucher or billing separately itemizing the tax. Thus, at least to the time of instigation of this suit, the tax may have been absorbed by the purchaser. By clause 10 of the sales agreement between the government and appellee

it is possible that there may be a recoupment from the United States of the amount of the assessment here in question, or appellee, by changing its business practice so as to separately itemize the tax, may add the tax to future sales. Consequently we will assume, solely for the purpose of this decision, that the economic burden of the tax is upon the United States. Third, the determination of whether the tax herein sought to be collected is valid must be controlled by principles enunciated by the Supreme Court of the United States for this is a question involving a Federal constitutional issue. Kern-Limerick, Inc., v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546.

▆ Appellee asserts that "the state cannot tax the means, i. e., the sale, by which the Federal government purchases the things it needs for carrying out its governmental purposes", and cites Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583. This assertion is a restatement of the general rule announced in that case:

"* * * While Mississippi may impose charges upon petitioner for the privilege of carrying on trade that is subject to the power of the State, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes." 277 U.S. 221, 48 S.Ct. 452.

It is to be conceded that the state may not directly tax the means used for the performance of Federal functions and therefore we have no quarrel with appellee's assertion. However, the question is still to be determined whether the Arizona exaction directly taxes the means by which the United States secures the things desired for its governmental purposes.

In Panhandle the Supreme Court in holding that Mississippi taxed the means by which the government secured the things desired for governmental purposes bottomed the decision on two conclusions: one, that the "Sale and purchase constitute a transaction * * * on which the [tax] burden rests"; and, two, that "The necessary operation of these enactments when so construed is directly to retard, impede, and burden the exertion by the United States of its constitutional powers". In a later case serious doubts were raised as to the second conclusion when a similar taxing statute was construed:

"But if it be assumed that the gross receipts tax may increase the cost to the government, that fact would not invalidate the tax." James v. Dravo Contracting Co., 302 U.S. 134, 160, 58 S.Ct. 208, 221, 82 L.Ed. 155.

and in a still later case that conclusion was expressly repudiated:

"* * * The Government, rightly we think, disclaims any contention that the Constitution, unaided by Congres-

sional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. State of Mississippi ex rel. Knox, supra; Graves v. Texas Co., supra [298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236], we think it no longer tenable. * * *

* * * * * *

" * * * The contractors were thus purchasers of the lumber within the meaning of the taxing statute, and as such were subject to the tax. They were not relieved of the liability to pay the tax. * * * because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors." State of Alabama v. King & Boozer, 314 U.S.

1, 8, 12, 62 S.Ct. 43, 45, 86 L.Ed. 3, 140 A.L.R. 615.

The repudiation of Panhandle was complete in February, 1954, when the Supreme Court in Kern-Limerick, Inc., v. Scurlock, supra, in distinguishing State of Alabama v. King & Boozer, departed from the principle that the sale and purchase constitute a transaction on which the burden rests and stated that the legal incidence of the tax was the determining factor:

" * * * Thus, King & Boozer is not controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States." 347 U.S. 122, 74 S.Ct. 411.

Plainly, the predicate for the holding in Panhandle Oil Co. v. State of Mississippi ex rel. Knox that the "Sale and purchase constitute a transaction * * * on which the burden rests" can no longer be considered as controlling. Regardless of where the burden rests, the decisive test under the class of taxing Acts now under consideration is where does the legal incidence of the tax fall.

The ultimate conclusion we have expressed herein is in accord with the very recent holding of the Supreme Court of Michigan in Federal Reserve Bank v. Department of Revenue, 339 Mich. 587, 64 N.W.2d 639. Therein under a similar stat-

ute, in an extended analysis of practically all of the cases cited by the parties in this case, together with others, the court reached the same conclusion:

"* * * Similarly, in Esso, in the course of distinguishing that case from United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, the reasoning of the court seems to boil down to that same concept, that it is the legal incidence and not the economic burden of a State tax to which the immunity or statutory exemption of a federal instrumentality extends and that exemption of the intermediate person upon whom the legal incidence of the tax falls is not to be implied, regardless of the fact that he passes his burden on to the United States, so long as Congress has not expressly exempted such person therefrom." 64 N.W. 2d 644–645.

It is our opinion that since The Garrett Corporation is by the Arizona Excise Revenue Act engaged in the business of selling tangible personal property and is the one upon whom the legal incidence of the tax falls, the state is not collecting a tax from the United States Government and the latter is not paying a tax to the state, and therefore the government's implied immunity from state taxation is not violated. We hold that the court below was in error in entering judgment in favor of The Garrett Corporation, and that judgment is hereby reversed with directions that judgment be entered in favor of the Arizona State Tax Commission.

Judgment reversed with directions.

LA PRADE, C. J., and UDALL, WINDES and PHELPS, JJ., concur.