**SUZY'S BAR & GRILL, INC.,**
**Respondent,**

v.

**KANSAS CITY, Missouri, a Municipal**
**Corporation, Appellant.**

**No. 60669.**

Supreme Court of Missouri,
En Banc.

April 10, 1979.

As Modified On Court's Own Motion On
Denial of Rehearing May 17, 1979.

Aaron A. Wilson, City Atty., George L. DeBitetto, Asst. City Atty., Kansas City, for appellant.

Haskell Imes, Kansas City, for respondent.

BARDGETT, Judge.

Appellant Kansas City (city) appeals from a judgment of the circuit court which invalidated ordinance numbers 42074, 43630, and 43864 which imposed a "License or Occupation" tax on the grounds that (1) the tax was a sales tax and had not been submitted to a vote of the people as required by sec. 94.510, RSMo 1969, and (2) the tax was imposed in violation of the uniformity provisions of art. 10, sec. 3, Mo.Const. The appeal was filed prior to January 2, 1979. This court has jurisdiction. Art. 5, sec. 3, Mo.Const., as amended 1970.

Because this court finds the tax to be a sales tax and invalid for the reason that it was not submitted to a vote of the people, the second issue will not be reached and the factual recitation will be restricted to that necessary to the decisional issue.

Respondent Suzy's Bar & Grill, Inc., is a restaurant in Kansas City. It paid taxes under the disputed ordinances under protest and then filed this action seeking a declaration that the tax was invalid and a judgment for refund. As noted, the circuit court found the tax to be invalid and ordered the refund.

The underlying facts are undisputed. The city passed a series of ordinances that imposed a 1% tax on the "gross receipts" of cafes, cafeterias, lunchrooms, and restaurants within the corporate limits of Kansas City. The ordinances are codified as sec. 21.95 of the Code of General Ordinances of Kansas City. The tax is to be paid on the gross receipts from the retail sales of food prepared on the premises and delivered to the purchaser. An amendment to the ordinance permitted a licensee to separately state the amount of the tax on all sales tickets for retail sales of food. Section 21.95 was enacted as an "Occupational License Tax" and was never voted on by the people of Kansas City. Thus far the

tax proceeds have been used to help retire the bonded indebtedness for the H. Roe Bartle Convention Center. However there is no legal limitation placed on the use of these funds and the funds are a part of the general revenue of Kansas City.

The city distributed a tax chart to respondent and others to be used by them with respect to the instant tax. The chart provides in part:

FOR RESTAURANT USE ONLY — Kansas, City, Missouri
Effective January 1, 1975
* Tax per Sales Tax Chart (3% Mo. State + 1% City Sales Tax)

| Sale | 4% Sales Tax * | 1% Occ. Lic. Tax | Total Tax |
|---|---|---|---|
| .00– .12 | .00 | .00 | .00 |
| .13– .31 | .01 | .00 | .01 |
| .32– .54 | .02 | .00 | .02 |
| .55– .81 | .03 | .01 | .04 |
| .82– 1.08 | .04 | .01 | .05 |
| 1.09– 1.35 | .05 | .01 | .06 |
| 1.36– 1.62 | .06 | .02 | .08 |
| 1.63– 1.87 | .07 | .02 | .09 |
| 1.88– 2.12 | .08 | .02 | .10 |
| 29.13–29.37 | 1.17 | .29 | 1.46 |
| 29.38–29.62 | 1.18 | .30 | 1.48 |
| 29.63–29.87 | 1.19 | .30 | 1.49 |
| 29.88–30.12 | 1.20 | .30 | 1.50 |

As noted supra, the circuit court found this tax to be a sales tax and, because city sales taxes must be submitted to the electorate pursuant to sec. 94.510 and since this was not done, held the ordinances invalid.

The court is aware of the fact that municipalities have utilized gross receipts of various businesses as the monetary basis for assessing an occupational, franchise, or licenses tax as a prerequisite to doing business within the municipality. *Kansas City v. John Deere Co.*, 577 S.W.2d 633 (Mo. banc 1979). This case does not concern a municipality's power to enact such a tax.

The question here is whether the tax enacted is a sales tax. The differences between various types of taxes have become blurred over the years as a result of numerous innovative methods of taxation engaged in by various governmental taxing authorities. As pointed out by appellant, the court is not bound by what the legislat-

ing body calls the tax but must determine the matter from a consideration of the provisions of the statute or ordinance itself. *State v. Parker Distilling Co.*, 236 Mo. 219, 139 S.W. 453 (banc 1911). Nor is it decisive to note that the tax involved here is called a "gross receipts" tax because the state sales tax is also a form of "gross receipts" tax. Section 144.021, RSMo 1969; *Fabick & Co. v. Schaffner*, 492 S.W.2d 737 (Mo.1973); *Virden v. Schaffner*, 496 S.W.2d 846 (Mo. 1973); *Farm & Home Savings Ass'n v. Spradling*, 538 S.W.2d 313, 316 (Mo.1976).

The fact that the ordinances impose the obligation to pay the tax of 1% upon the licensee without affording the licensee the legally enforceable right to collect 1% of the food bill from the customer does not necessarily mean the tax is an "Occupational License Tax" and not a "sales tax". If the tax is truly an occupational license tax on gross receipts assessable against the licensee, then whatever part of the customer's bill which represents a portion of the licensee's tax obligation is collectible from the purchaser because it is simply part of the charge for food made by the licensee out of which the licensee must pay the expense of doing business, including such expense items as taxes. *Ludwigs v. City of Kansas City*, 487 S.W.2d 519 (Mo.1972). And whether the merchant chooses to advise the customer of what the merchant considers to be the amount of his (merchant's) license tax by inserting that amount on the customer's bill would seem to be a matter of choice with the merchant and would not require specific legislative authority. The cases of *State ex rel. City of West Plains v. Public Service Commission*, 310 S.W.2d 925 (Mo. banc 1958), and *State ex rel. Hotel Continental v. Burton [Public Service Commission]*, 334 S.W.2d 75 (Mo.1960), relied upon by the city in support of its contention that the instant tax is not a sales tax simply because the ordinances permitted the licensee to state the tax on the customer's bill, are inapposite. The issue in *City of West Plains* primarily involved the question of whether the Public Service Commission under its rate-making power had the authority to permit the utility, as part of an authoriz-ed rate, to pass a proportionate share of the utility's municipal license taxes on to consumers who resided in the taxing municipality. The issue in *Hotel Continental* was, with minor variations, the same as in *City of West Plains*. However, the difference between the *base* upon which the occupational license tax was assessed in *West Plains* and *Hotel Continental* as compared with the *base* upon which the instant city tax is assessed points up the difference between the occupational license tax and a sales tax and forms the basis for our decision in this case. In both instances, the base is referred to as "gross receipts" but the distinction lies in the difference between the *receipts* upon which the tax is assessed.

In *West Plains* and *Hotel Continental* the license tax consisted of a percentage of the monies received by the licensee *including the amount of money itemized by the licensee utility as the customer's proportional share of the tax*. In the instant case the 1% Kansas City license tax is not assessed on all the revenue received by the licensee from the food purchasers. The 1% is assessed only on that amount representing the restaurant food charge but not on the sum received as state and city sales tax or the Kansas City "Occupational License Tax". This is clearly demonstrated by the Kansas City tax chart shown supra. Using the last line of the chart it is seen that the 4% sales tax of 1.20 on a 29.88–30.12 purchase is arrived at by multiplying 29.88 × .04 for a tax of 1.1952 (1.20), and the occupational tax is arrived at by using the *same* base of 29.88 and multiplying it by .01 for a tax of .2988 (.30), the total tax then amounting to 1.50. If this were an occupational license tax, the allocation of tax on the customer's bill would not be 1% of the *food charge* nor the precise percentage specified in the ordinance as the tax on the licensee but would be a percentage of the licensee's tax. This is demonstrated by the case of *Ludwigs v. Kansas City*, supra.

In *Ludwigs* the plaintiffs-taxpayers sued Kansas City to recover gross receipts taxes allegedly collected by utility companies and paid by the utilities to the city. Plaintiffs

claimed the amount collected and paid to the city exceeded the amounts specified in the license tax ordinances. The tax specified in one of the ordinances was 10% of gross receipts of the utility. Plaintiffs claimed they were being charged over 11% on their bills. The court held the city had not exceeded the ordinance's amount and set forth the following example, 487 S.W.2d at 521, footnote 4:

"For example, plaintiffs say that under the 10% gross receipts tax a customer with a bill of $10.00 for utility service would pay $10.00 for the service, plus $1.10 for the tax, or a total of $11.10, whereas his part of the tax should be only $1.00 and the total only $11.00.

"Defendants' example of the method used by each utility company to compute the occupation license tax and each customer's pro rata part thereof is as follows: assuming taxable revenues of $1,000,000 subject to the 10% gross receipts tax, the utility company's license tax would be $100,000 to be paid from the $1,000,000. The pro rata share of this tax of each customer with a $10.00 bill would be $1.00. The Commission's order required that the customer's total bill be broken down to show the tax separated from the other part of the charge, that is, $9.00 for all other allocations in the rate and $1.00 for the customer's pro rata share of the license tax. To arrive at a formula to apply to $9.00 to arrive back at the $10.00 overall bill necessary to pay the tax, one simply takes the equation 1.00/9.00, which equals 11.1%. This percentage (11.1) applied to $9.00 equals $1.00, the customer's pro rata share of the license tax. The gross receipts from the $10.00 customer remains as $10.00 and, under this method of computation, the utility company continues to pay a license tax of $1.00 on a bill of $10.00 (10% of $10.00)."

In other words, a gross-receipts-occupational-license tax starts with the revenue received by the licensee, not the basic charge made to the customer by the merchant, and assesses a tax equal to a percentage of those revenues without regard to the makeup of the revenue and without restrictions to the percentage stated in the taxing ordinance. In the example, supra, the 10% was assessed against the revenues of the utility and included in those revenues was the proportionate amount of those taxes attributed by the utility to each customer. On a *10%* gross receipts tax the percentage collected from the customer was *11.1%* of the basic bill even though the tax was only 10% of the gross receipts of the licensee.

*Ludwigs* cites *State Tax Commission v. Quebedeaux Chevrolet*, 71 Ariz. 280, 226 P.2d 549 (1951), and *Vause & Striegel, Inc. v. McKibbin*, 379 Ill. 169, 39 N.E.2d 1006 (1942), with approval. *Quebedeaux Chevrolet*, involved an automobile dealer who claimed he was not liable for gross receipts taxes on his collections itemizing such taxes. The Supreme Court of Arizona held that the tax was part of the overall cost of operation and must be considered by the plaintiff in fixing his selling price, stating at 552: *"Each item considered in setting the ultimate selling price, including the tax now in question, is paid by the consumer solely to get the goods.* The tax therefore is part of the purchase price, and this price which is paid to get the goods which plaintiff does sell constitutes gross income on each transaction. . . . The tax therefore is a part of the selling price which forms the base upon which the amount of the tax is levied."

In *Vause* the validity of a certain rule, No. 20, promulgated by the department of finance was in issue. The rule provided, 39 N.E.2d at 1007: "Regardless of how the retailer may set up his selling price, he is required to pay a tax measured by his gross receipts. For example, where a merchant follows the practice of selling an article for $1.00 and adds 3 cents thereto to reimburse himself for the [3%] tax which he will be required to pay, his gross receipts from such sale are $1.03, and he will be required to pay a tax at the rate of [3%] of $1.03 and not at the rate of [3%] of $1.00." The Illinois Supreme Court affirmed the decree of the circuit court's finding that the rule was valid.

The foregoing cases are cited to show how an occupational license tax on gross receipts actually operates in order to dem-

onstrate that the Kansas City tax involved in this case is not an occupational license tax based on gross receipts but is a sales tax based on each individual sale.

A sales tax is assessed against the taxpayer as a percentage of the price of the goods. If the tax in *Ludwigs* was a *sales* tax of 10%, then the tax on a $9.00 utility bill would be .90 and not 1.00 and the total remittance to the utility would be 9.90 and not 10.00. An occupational license tax would then be computed as a percentage of the 9.90 and not a percentage of 9.00.

In the instant case, Kansas City admittedly assesses this tax on the owners of restaurants, etc., at 1% of the base price, the same as the state and city *sales tax is assessed.* If the menu price for food purchased totals $30.00, the sales tax (state 3% + city 1%) of 4% is $1.20 (.04 × 30 = 1.20), and the "Occupational License Tax" of 1% is .30 (.01 × 30 = .30). It is clear, therefore, that the tax is assessed on the amount of the sale and not upon the amount of the licensee's receipts.

*The difference between a sales tax and a* license tax which is prorated and itemized to a customer may or may not be significant in its actual impact. Nevertheless, the legislature by sec. 94.510 has required that sales taxes assessed by municipalities be first approved by the electorate. As such, the legislature perceived a difference between sales taxes and other taxes, including occupational license taxes, and required the former to be submitted to the people.

The instant tax imposed by ordinance numbers 42074, 43630, and 43864 is a sales tax and it was not submitted to a vote of the people as required by sec. 94.510, RSMo 1969, and is therefore invalid.

The judgment of the circuit court is affirmed.

MORGAN, C. J., and DONNELLY, RENDLEN and SIMEONE, JJ., concur.

SEILER, J., concurs in separate concurring opinion filed.

FINCH, Senior Judge, concurs and concurs in separate concurring opinion of SEILER, J.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

SEILER, Judge, concurring.

I concur in the outcome of the principal opinion.

As I understand the situation, where Kansas City gets into trouble with the tax under consideration is that it uses as the base the advertised price, the menu price, or the "sticker" price used by the merchant. Applying a percentage to the menu price is the equivalent of a sales tax. On the other hand, had Kansas City used as its base here the menu price (which we can assume would include as part of the overhead the portion of the gross receipts tax allocable to that customer) plus the four percent sales tax, and then applied its one per cent license tax against the total of the above two items, there would have been a license tax measured by gross receipts and the ordinance would be valid and no vote of the people would be required.