462 P.2d 97

**CF&I STEEL CORPORATION, Appellant,**

v.

**STATE TAX COMMISSION of Arizona et al.,
Appellees.**

**No. I CA–CIV 886.**

Court of Appeals of Arizona,
Division 1.

Department A.

Dec. 10, 1969.

Rehearing Denied Jan. 8, 1970.
Review Denied Feb. 10, 1970.

Gust, Rosenfeld & Divelbess, by John C. Wesley, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., by William T. Boutell, Jr., Sp. Asst. Atty. Gen., Phoenix, for appellees.

CAMERON, Judge.

This is an appeal from the granting of the motion of the defendant, State Tax Commission, for summary judgment and the denial of the motion of the plaintiff, CF&I Steel Corporation, for summary judgment. The trial court found that the sum of $55,-172.04 in taxes was properly assessed and collected by the defendant from the plaintiff.

We are called upon to determine:

1. Whether defendant was doing business in Arizona for the purpose of being included under the Arizona Transaction Privilege Tax Act, A. R.S. § 42–1301, et seq., and the Educational Excise Tax Act, A.R.S. §§ 42–1361 and 1362, and

2. if included, does this constitute an undue burden upon interstate commerce.

The facts are not in dispute and are essentially as follows. The plaintiff-appellant is a Colorado corporation authorized to do business in the State of Arizona. It is duly licensed in Arizona under the Transaction Privilege Tax Act. Its general offices are located in Denver, Colorado, and it maintains a District Office and warehouse in Phoenix, Arizona, and em-

ploys some 15 people in the State of Arizona mostly in a sales capacity. Sales made through the District Office in Phoenix and out of the Phoenix warehouse are not in dispute in this case.

The principal products involved in this case are grinding rods and balls, steel reenforcing bars, and the like. These are mining supplies and are not normally handled by the Phoenix office, but by the Mining Products Sales Department with its office in Denver, Colorado. Whenever orders for these items are received by the Phoenix office they are referred to the appellant's office in Colorado. Plaintiff's salesmen from the Denver office call upon customers in Arizona and solicit business independent of the Phoenix office.

The materials ordered are shipped directly from appellant's mill in Pueblo, Colorado, or California by common carrier and all shipments are made f. o. b. destination. Prices quoted to the Arizona firms are also f. o. b. Arizona. The affidavit of Robert J. Rowe, Chief Staff Accountant of CF&I Steel Corporation, Pueblo, Colorado, states as follows:

> "The United States Government requires steel mills to have an f. o. b. mill price on those items of production which it has determined to be steel mill items. Steel bars (grinding rods) is such an item. The total charge to the customer will then be the f. o. b. mill price plus transportation costs plus applicable taxes, if any. When our company adds to the f. o. b. mill price the transportation charges for delivering material to the customer's place of business for consumption, we may find that we are not competitive price-wise at many destinations.

> "Therefore, to the extent to which a sale may be judged to be commercially attractive, it is common practice for steel mills to absorb freight in order to meet the competition of mills more closely located to those particular sales destinations.

> \*   \*   \*   \*   \*   \*

> "\*   \*   \*   Under other circumstances, that is, where we are not required to meet competitive prices, our products are quoted and invoiced f. o. b. shipping point, freight collect, at shipping point base price."

Both the plaintiff, steel corporation, and the defendant, Tax Commission, moved for summary judgment (Rule 56, Rules of Civil Procedure, 16 A.R.S.) and the trial court denied the motion of plaintiff and granted the motion of the defendant Tax Commission in the amount of the taxes paid. From said determination plaintiff appeals.

## IS DEFENDANT DOING BUSINESS IN ARIZONA?

█ The tax in question is defined as follows:

"A. The tax imposed by subsection A of § 42-1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of selling any tangible personal property whatever at retail. \*   \*   \*." A.R.S. § 42-1312, subsec. A.

The statute also states:

"A. This article shall not apply to:

\*       \*       \*       \*       \*       \*

"4. Sales in interstate or foreign commerce when prohibited from being so taxed by the constitution of the United States or the constitution of this state." A.R.S. § 42-1321, subsec. A par. (4).

The Arizona Supreme Court has held that the tax imposed by these sections is a tax on the privilege of doing business in the State and is not a sales tax. Arizona State Tax Com'n v. Garrett Corporation, 79 Ariz. 389, 291 P.2d 208 (1955).

"In conclusion we hold: (1) that the Act does not impose a tax upon the purchaser nor upon sales, but rather places a tax upon the seller for the privilege of engaging in business and fixes the gross

income from sales as the base for computing the tax * * *." State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 289, 226 P.2d 549 (1951).

And we have stated:

"We hold that title transferred in New Jersey and therefore, within the meaning of the above statute defining sale, that the sale occurred in New Jersey. Since the sale did not occur in the State of Arizona, the transaction is not subject to the Arizona tax for the reason that A.R.S. § 42–1312, subsec. A imposes a tax only upon those ' * * * engaging or continuing *within this state* in the business of selling any tangible personal property whatever at retail * * *.' (Emphasis supplied.) * * *." Goodyear Aircraft Corp. v. Arizona State Tax Com'n, 1 Ariz.App. 302, 305, 306, 402 P.2d 423, 426 (1965).

And:

" * * * And our courts have held that to be the subject of the Transaction Privilege Tax the 'sale' must have taken place in Arizona. Goodyear Aircraft Corp. v. Arizona State Tax Com'n, supra. In the instant case the equipment sold to Duval was delivered F.O.B., Mineral Park, Arizona, and under the rationale in Goodyear, supra, there may well have been a sale in the State subject to the tax. * * *." Arizona State Tax Com'n v. Parsons-Jurden Corp., 9 Ariz. App. 92, 94, 449 P.2d 626, 628 (1969).

We believe under the circumstances in this case that even though there was an attempt to separate purely local business handled by the District Office in Phoenix upon which taxes were paid from the "direct" sales made from Colorado, the appellant was doing business within the State of Arizona and the transaction tax was properly assessed.

## IS THIS A BURDEN UPON INTERSTATE COMMERCE?

Our statute specifically excludes taxes upon "[s]ales in interstate or foreign commerce when prohibited from being so taxed by the constitution of the United States or the constitution of this state". A.R.S. § 42–1321 subsec. A, par. (4). This does not mean that because an item is moved in interstate commerce that it is free from state taxation:

"The tax imposed by the act is not a sales tax as such but is a tax upon the *privilege of engaging in business* measured by the amount or value of business done. * * * The taxable event under the act is the engaging in business within the state.

"A person may engage, within the state, in a business that is either intrastate, interstate, or both intrastate and interstate in character. This is most easily seen from the operation of carriers. A carrier may be engaged in the business of transporting freight or passengers between different points inside the state, or through the state, or between points inside the state and points outside the state. * * * [I]t is clear that a tax upon the privilege of engaging in business within the state, if not limited, includes and applies to interstate as well as to intrastate business." Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 223, 224, 254 P.2d 1029, 1031 (1953).

Were there any doubt as to whether this would be a burden upon interstate commerce in contravention of the commerce clause and the due process clauses of the United States Constitution, we believe the matter was resolved by the United States Supreme Court:

"We start with the proposition that '[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business.' Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 82 L.Ed. 823 (1938). 'Even interstate business must pay its way,' Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 63 L.Ed. 590 (1919), as is evidenced by numerous opinions of this court.

* * * * * *

"Here it is admitted that General Motors has entered the State and engaged in activities therein. In fact, General Motors voluntarily pays considerable taxes on its Washington operations but contests the validity of the tax levy on four of its Divisions, Chevrolet, Pontiac, Oldsmobile and General Motors Parts. Under these circumstances appellant has the burden of showing that the operations of these divisions in the State are 'dissociated from the local business and interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption'. Norton Co. v. Department of Revenue, 340 U.S. 534, 537, 71 S.Ct. 377, 95 L.Ed. 517 (1951). And, as we also said in that case, this burden is not met 'by showing a fair difference of opinion which as an original matter might be decided differently. This corporation, by submitting itself to the taxing power * * * [of the State], likewise submitted itself to its judicial power to construe and apply its taxing statute insofar as it keeps within the constitutional bounds. Of course, in constitutional cases, we have power to examine the whole record to arrive at an independent judgment as to whether constitutional rights have been invaded, but that does not mean that we will re-examine, as a court of first instance, findings of fact supported by substantial evidence.' (citations omitted)." General Motors Corp. v. Washington, 377 U.S. 436, 439, 441, 442, 84 S.Ct. 1564, 1567, 1568, 12 L.Ed.2d 430 (1964).

Although we would agree with appellant that General Motors Corporation had salesmen who lived within the State soliciting the business in question as opposed to the fact situation in the instant case where the salesmen from Colorado called upon the mining companies in the State of Arizona, we still feel that CF&I Steel Corporation has not carried the burden of showing why it should be exempt from the Transaction Privilege Sales Tax upon the sales in question.

Judgment affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.