2 P.3d 110

**CITY OF TUCSON, a municipal corporation, Plaintiff–Appellee,**

v.

**TUCSON HOTEL EQUITY LIMITED PARTNERSHIP, dba Doubletree Inn, Defendant–Appellant.**

**No. 1 CA–TX 99–0016.**

Court of Appeals of Arizona, Division 1, Department T.

April 25, 2000.

Daniel T. Garrett LLC By Daniel T. Garrett, Mesa, Attorneys for Defendant–Appellant

Thomas J. Berning, City Attorney By David Deibel, Senior Assistant City Attorney, Tucson, Attorneys for Plaintiff–Appellee.

## OPINION

GERBER, Judge

¶ 1 Tucson Hotel Equity Limited Partnership dba Doubletree Inn (Doubletree) appeals from summary judgment for the City of Tucson (City) on Doubletree's claim to recover refunds of the City's business privilege taxes under the telecommunications and transient rental classifications. The appeal presents these issues:

1. Whether Doubletree was entitled to refunds of excess taxes paid on receipts from facsimile services mistakenly reported as taxable at 4% rather than 2% and on

non-taxable laundry services mistakenly reported as taxable at 4%;

2. Whether that portion of Doubletree's gross business receipts represented by the difference between Doubletree's guest charges for interstate long distance calls and its own costs for those calls is taxable under the telecommunication services classification defined by Tucson City Code section 19–470; and

3. If the answer to issue 2 is yes, whether Arizona law nevertheless precludes imposition of the Tucson telecommunication services tax on those amounts.

We have appellate jurisdiction under A.R.S. § 12–2101(B) (1994).

## FACTS AND RELEVANT PROCEDURE

¶ 2 Doubletree operates a hotel in Tucson. Among the guest services that Doubletree provides are interstate telephone calls from guests' rooms, facsimile transmissions, and laundry services.

¶ 3 During the audit period beginning August 1, 1992, through July 31, 1996, Doubletree marked up its charges for laundry and facsimile services by 9.5%, which corresponded to the state and city transient rental taxes of 5.5% and 4.0% respectively. Doubletree's guest bills showed the marked-up total for each service without separating charges for taxes.

¶ 4 Doubletree charged its guests a single amount for each interstate long distance telephone call made from their rooms during the audit period. In essence, Doubletree marked up its own cost for each interstate call by 50%, added a further mark-up if applicable, and then added 8% to the grand total for the purpose of passing through to the guest the state (5%) and federal (3%) telecommunications excises for which Doubletree was liable.[1] Doubletree's guests paid no telecommunication fees or taxes to Doubletree or to other telecommunication providers aside from the fees and taxes incorporated into Doubletree's single-amount charges for interstate calls.

---

1. The guest charge for an interstate call was calculated as $(((CC + OAC + \$2.12 \text{ operator surcharge}) \times 1.5) + AAM) \times 1.08$, where CC is the long distance carrier's base charge to Doub-

letree for the call, OAC is any additional operator assistance charge by the carrier, and AAM is any applicable additional mark-up by Doubletree.

¶ 5 From August 1, 1992, through July 31, 1996, Doubletree mistakenly reported its gross revenues from telecommunications, facsimile, and laundry services to the City under the "transient rental" classification, on which the tax rate was 4%. Laundry services were in fact non-taxable, and the rate for facsimile transmissions and other telecommunication services was 2%.

¶ 6 Doubletree asked the City to refund the full amount of taxes it had paid on its receipts from guests' interstate telephone calls during the audit period. When the City audited Doubletree's records for that period, the audit determined that Doubletree was liable for tax on its receipts from interstate calls at the rate of 2% rather than 4%. The City accordingly credited Doubletree with $18,590.84, half the sum it had paid on those calls under the transient rental classification. The audit also determined that Doubletree was not entitled to a refund of any excess taxes it had paid on facsimile transmission and laundry charges because it had collected those excess taxes from its guests.

¶ 7 Doubletree protested the audit results. The City's hearing officer sustained the audit's determination that Doubletree was not entitled to a refund of excess taxes, but reversed its finding that Doubletree's receipts from guests' interstate calls were taxable under the telecommunication services classification.

¶ 8 The City appealed the hearing officer's ruling to the tax court. Doubletree counterclaimed for relief from the hearing officer's determination that the excess taxes it paid on facsimile and laundry services were non-refundable. On cross-motions for summary judgment, the tax court ruled for the City on both claims. Doubletree timely appealed.

### ANALYSIS

#### DOUBLETREE'S CLAIM FOR REFUNDS OF EXCESS TAXES

¶ 9 Tucson City Code ("T.C.C.") section 19–250(a)(1), entitled "Remittance of all tax charged and/or collected," provides that a taxpayer who collects city taxes from a customer in excess of the amount actually due must remit the excess to the city tax collector. Tucson City Code Reg. 19–250.1 provides:

> If a taxpayer collects taxes in excess of the combined tax from any customer in any transaction, all such excess tax shall be paid to the taxing jurisdictions in proportion to their effective rates. The right of the taxpayer to charge his customer for his own liability for tax does not allow the taxpayer to enrich himself at the cost of his customers.

¶ 10 Although Doubletree does not deny that it calculated its charges for facsimile and laundry charges during the audit period by adding a percentage component representing the tax rates it thought were applicable, it points out that it charges its customers a single amount for each service without a separate or additional charge for taxes. Doubletree contends that a merchant cannot be said to "collect" tax from its customer unless "the person from whom the monies are being collected knows, or at least believes, that that which is being collected is a tax." Doubletree argues that a tax can thus be deemed collected only when a separately stated "added charge" is made.

¶ 11 Doubletree cites no authority that supports this analysis and we do not agree with it. T.C.C. section 19–250(a)(1) and Reg. 19–250.1 seek to prevent merchants from "profiting at the expense of the purchaser under the guise of a compulsory tax." *Arizona State Tax Comm'n v. Garrett Corp.,* 79 Ariz. 389, 393, 291 P.2d 208, 210 (1955). Under Doubletree's analysis, merchants could evade that policy merely by concealing from their customers that they were passing along any taxes at all.

¶ 12 By factoring taxes into its single-amount charges for facsimile and laundry services and then requiring its customers to pay those charges, Doubletree "collected" those taxes whether its customers knew it or not. T.C.C. section 19–250(a)(1) required Doubletree to remit the taxes to the City. The tax court correctly held that Doubletree was not entitled to get them back.

#### TAXABILITY OF DOUBLETREE'S LONG DISTANCE "MARK-UP" UNDER T.C.C. SECTION 19–470

¶ 13 The City determined that Doubletree's gross receipts from its guests' inter-

state calls, less Doubletree's own costs for each call, were taxable under the telecommunication services classification, T.C.C. section 19–470. The City's theory was that these mark-ups constituted charges for connection and access to a telecommunications system or network, which section 19–470(a)(2)(a) and (c) expressly included within taxable gross income from telecommunication services. The City argued that the tax exemption in section 19–470(c) for "[c]harges by a provider of telecommunication services for transmissions originating in the city and terminating outside the state" was inapplicable because connection/access charges and transmission charges were separate, distinct items of gross income under section 19–470(a), and the City sought only to tax connection/access charges.

¶ 14 Although the City's analysis convinced the tax court,[2] it strikes us as less convincing. The City seeks to tax the reselling of interstate telecommunication services. As the Massachusetts Department of Revenue succinctly explained in a related case:

In general, a purchaser of telecommunications services purchases the services for resale if the purchaser does not itself consume the services and if the purchaser is in the business of selling telecommunications services. A purchaser consumes a telecommunications service that it purchases if it is a participant in the telecommunication, such as the actual originator or recipient of a telephone call, and not merely the person that owns the telecommunications equipment or that is billed for the service by the telecommunications provider. Examples of purchasers that may themselves be in the business of **selling telecommunications services include, but are not limited to, hotels and motels that separately charge guests for telephone calls placed by guests** .... (Emphasis added.)

Massachusetts Dep't of Revenue, Technical Information Release 1991–1, Mar. 29, 1991, *quoted in* WALTER L. HELLERSTEIN AND JEROME R. HELLERSTEIN, STATE TAXATION, ¶ 15.12[3], at 15–75 to 15–76, n. 312 (3d ed.1999).

¶ 15 Simply put, Doubletree sells interstate long distance telecommunication services directly to its guests. Its charges encompass both its own costs for such services and a significant profit. Nothing about the transaction supports the view that the profit portion constitutes a separate charge for "connection to a telecommunication system" within the meaning of T.C.C. section 19–470(a)(2)(a), or for "access to or subscription to or membership in a telecommunication system or network" within section 19–470(a)(2)(c). Doubletree does not charge its guests for "connection" or "access" to a telecommunication system and there is no other operator its guests pay separately from Doubletree. Its guests pay the full consumer price for their interstate telephone calls directly to Doubletree. In receiving those payments, Doubletree acts as a "provider of telecommunication services" who charges its customers "for transmissions originating in the city and terminating outside the state...."[3] Under section 19–470(c), Doubletree is exempt from the Tucson telecommunication services tax on such charges.

¶ 16 The City's analysis would treat T.C.C. section 19–470(c) not as a true exemption provision but rather as creating a unique deduction from otherwise taxable gross receipts for the taxpayer's interstate long distance costs. This interpretation conflicts

---

**2.** The tax court reasoned:

While subsection (c) exempts long distance calls from tax, Plaintiff is taxing the fees charged for **access or connection** to the telecommunications systems and not on the actual transmissions. Taxation is not imposed on the actual transmissions, but on the fees charged for access to the system.

Defendant, through its use of a markup formula, charges its customers for access and connection to telecommunications systems or networks. Therefore, Plaintiff's taxation of Defendant's access charges is not precluded by

A.R.S. § 42–1453(A)(2) [currently renumbered as § 42–6004(A)(2)]; nor are Defendant's charges exempt from taxation under T.C.C. § 19–479(C) [sic, 19–470(C)].

(Emphasis in original).

**3.** The City cites no authority for the proposition that an entity cannot be an interstate telecommunication services provider within the meaning of Code section 19–470 unless it is also licensed as such by a state or federal regulatory agency. We are likewise aware of no such authority.

with both section 19–470 and the basic concept of a gross receipts tax. The Code imposes the telecommunication services tax on "the **gross income from the business activity** upon every person engaging or continuing in the business of providing telecommunication services to consumers within this city." (T.C.C. § 19–470(a)) (emphasis added). T.C.C. section 19–200(a)(3) defines "gross income" as including "all receipts, cash, credits, barter, exchange, reduction of or forgiveness of indebtedness, and property of every kind or nature derived from a sale, lease, license for use, rental or other taxable activity." Moreover, the tax statutes prohibit deducting business expenses from gross income:

> No deduction or exclusion is allowed from gross income on account of the cost. of the property sold, the time value of money, expense of any kind or nature, losses, materials used, labor or service performed, interest paid, or credits granted.

T.C.C. § 19–200(c).

¶ 17 Section 19–200(c)'s prohibition against deductions for business expenses militates strongly against the City's interpretation of section 19–470(c). Sections 19–200 and 19–470(c) can best be reconciled by viewing section 19–470(c) not as allowing the deduction of particular costs from otherwise taxable gross receipts but rather as exempting from section 19–470 all gross receipts from providing interstate telecommunication services.

¶ 18 T.C.C. section 19–470(a)(2)(b) supports this conclusion from a different direction. That subsection provides that gross income from telecommunication services includes "[t]oll charges, charges for transmissions, and charges for other telecommunications service provided that such charges relate to transmissions originating in the city and terminating in this state." Sections 19–470(a)(2)(b) and 19–470(c) are complementary and must be read together.[4] By specifically including within the

telecommunication services tax base all toll, transmission, and other charges "relating" to **intrastate** telecommunication services, subsection (a)(2)(b) implicitly excludes charges relating to **interstate** telecommunication services. Section 19–470(c), which must be interpreted consistently with section 19–470(a)(2)(b), accordingly cannot limit the interstate telecommunication exclusion/exemption strictly to charges made by the utility whose services a provider like Doubletree resells.

¶ 19 The City's reliance on *Hilton Hotels Corp. v. Commissioner of Finance of City of New York,* 219 A.D.2d 470, 632 N.Y.S.2d 56 (1995), is misplaced. There the New York court sustained a city excise assessment on a hotel's long distance telephone call mark-ups over the hotel's own long distance costs. The structure of that tax, however, significantly differs from the telecommunication services privilege tax imposed in T.C.C. section 19–470. The tax base for the New York "gross operating income" excise in *Hilton Hotels* was the "surcharge" calculated by "itemiz[ing] total receipts from local calls, and for long-distance calls, and [deducting] from each respectively the telephone company charges...." *Id.* at 58. The New York tax thus expressly provided for the result that the City seeks from Code section 19–470. But unlike the New York taxing provisions, T.C.C. section 19–470 provides no textual support for any such interpretation.

¶ 20 Our decision in *Sonitrol of Maricopa County v. City of Phoenix,* 181 Ariz. 413, 891 P.2d 880 (1994), likewise does not support the City's position. There we addressed Phoenix City Code section 14–470(c), Phoenix's version of T.C.C. section 19–470(c), and held only that the exemption for transmissions "originating in the city and terminating outside the state" did not apply to "the portion of section 14–470(a) which taxes the gross income from the business of providing securi- ·

---

4. As we noted in discussing Phoenix's identical version of section 19–470,

> Subsection (a)(2)(A) through (D) all include within "gross income from ... telecommunication services" fees and charges directly or indirectly related to the use of communications channels. The proviso in subsection (a)(2)(B) merely functions to delimit the addition to

gross income accomplished by that subsection. **Section 14–470(c) complements subsection (a)(2)(B), and solidifies the statutory intent, by expressly exempting charges for interstate transmissions originating in Phoenix.**

*Sonitrol of Maricopa County v. City of Phoenix,* 181 Ariz. 413, 420, 891 P.2d 880, 887 (1994)(emphasis added).

ty alarm monitoring services." *Id.* at 419, 891 P.2d at 886.

¶ 21 It is true, as the City points out, that *Sonitrol* characterized the express inclusions in gross income in section 14–470(a)(2)(a) through (d) as encompassing items other than fees charged directly for the "telecommunication services" listed in section 14–470(a)(1), and that the court included "telecommunication system connection and access fees" in that category along with security alarm monitoring services. *Sonitrol* nevertheless held only that section 14–470(c) did not exempt income from security alarm monitoring services because that income did not come from "charges for transmissions of any kind." *Sonitrol* had no occasion to decide whether "toll charges, charges for transmissions, and charges for other telecommunication services" within section 14–470(a)(2)(b) should be considered as a unitary package as applied to telephone calls. We have now held that they should, both as to intrastate and interstate calls. Both the taxing provisions and the economic realities of Doubletree's resales of interstate telephone calls reveal that its charges simply cannot be broken down into non-taxable interstate telecommunication services and separate taxable access or connection charges.

### EFFECT OF A.R.S. SECTION 42–6004(A)(2)

¶ 22 Because we hold that City Code section 19–470(c) exempts from taxation all Doubletree's income from guests' interstate telephone calls, we need not consider whether A.R.S. § 42–6004(A)(2) (1999), formerly A.R.S. § 42–1453(A)(2), would preclude the imposition of a tax on such income pursuant to T.C.C. section 19–470.

### ATTORNEY'S FEES

¶ 23 Doubletree requests an award of attorney's fees on appeal under A.R.S. § 12–348. We grant the request under § 12–348(B) (Supp.1999), limited to legal services related to Doubletree's appeal of the telecommunication services tax assessment and subject further to the limitations prescribed by A.R.S. § 12–348(E) (Supp.1999).

### *CONCLUSION*

¶ 24 The tax court correctly sustained the City's refusal to refund Doubletree's tax overpayments relating to facsimile and laundry services. The tax court was mistaken in sustaining the City's assessment against Doubletree under Tucson City Code section 19–470. The judgment is accordingly affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge and JAMES B. SULT, Judge.